Elisa Davidson, Plaintiff and Appellee, *v.* H. I. Hettinger & Co. et al., Defendants and Appellants.

No. 8611. Argued April 1, 1943.—Decided July 7, 1943.

---

*James R. Beverley, R. Castro Fernández,* and *José López Baralt* for Hettinger & Co., and *Juan Valldejuli Rodríguez* for The Government of the Capital, appellants. *Daniel Pellón, Jr.,* and *Juan Tomás Peñagarícano* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

On March 4, 1940, about three o'clock in the afternoon, Elisa Davidson was walking on the sidewalk of Figueroa Street, Stop 18½, Santurce, toward Ponce de León Avenue. When passing the Miranda Brothers buildings, she tripped over a hole in the sidewalk and fell, fracturing her right femur from which she has remained permanently injured. This hole was dug by H. I. Hettinger & Co. by virtue of a contract with the Government of the Capital for the installation of a sewer for wastage in the section which covers and included Figueroa Street. The cause of action in this case is based on the negligence of the defendant H. I. Hettinger & Co. in leaving the excavation without protection knowing that the sidewalk was a place available for public use, and in the negligence of the codefendant, the Government of the Capital, which knew of the work which was being done and which consented to the act of Hettinger & Co. in leaving the hole without any protection. The District Court of San Juan decided in favor of the plaintiff against both defendants and granted the plaintiff $4,000 damages in addition to costs and $150 as attorney's fees.

The defendants have appealed separately just as in the lower court they filed their pleadings separately and appeared at the trial represented by different attorneys. However, in this court the defendants-appellants filed a brief jointly and at the hearing of the case the attorney for H. I. Hettinger

& Co. alone appeared. Although some of the defenses are common to both appeals, the attorney for Hettinger & Co. admitted at the oral argument that if the first and fourth errors raised by it to the effect that the work had been delivered and accepted by the Government of the Capital, resulting in the elimination of responsibility of Hettinger, in that event the only entity left to defend itself from the negligence charged would be the Government of the Capital. In spite of this possibility and there being different defenses between the codefendants-appellants, the said Government relied solely on the attorney for Hettinger before this court despite the fact that it had an attorney paid by its taxpayers to represent its interests.

The appellants allege that the lower court erred in holding that the existence of the hole in the sidewalk of Figueroa Street had been established as of March 4, 1940, and in holding Hettinger responsible therefor; in not holding that the accident was unfortunate, fortuitous, and inevitable, in the occurrence of which the conduct of Hettinger and of the Government of the Capital played no part; in not holding that the plaintiff was guilty of contributory negligence; in holding that the existence of a small hole (two inches in this case) in a sidewalk of the city, results in responsibility of the municipality and the person who allegedly made it; in holding Hettinger responsible despite the acceptance of the theory that once the work is ended and accepted, responsibility of the contractor ends, and in awarding to the plaintiff $4,000 damages and attorney's fees.

The first three errors assigned involve principally an attack on the weighing of the evidence by the lower court.

The facts that the trial judge considered proved were the following:

"The court deems proved that between Quiñones Hettinger & Co. and the Government of the Capital a contract was entered into to construct for the latter a sewer for wastage in the city of San Juan. Subsequently the present defendant, the corporation known as H. I.

Hettinger & Co., with the consent of the municipality, took over the said job and began its work January, 1939. The portion of José R. Figueroa Street between Fernández Juncos Avenue and Ponce de León Avenue was included in the project to be carried out by the Hettinger corporation. The work was done by opening a ditch through the center of the street where the principal pipe was installed and from there it was joined to the different houses of the said street. For this purpose ditches were also dug in order to lay tubes to collect water from the houses in order to carry it to the principal pipe. The testimony of the defendants tended to show that, for the installation of pipes from the houses to the street, ditches were not dug in the sidewalks except in exceptional cases, the general rule being that they dug tunnels below the pavement of the sidewalk. There was a slight conflict in the testimony as to whether or not a ditch was dug in Figueroa Street at the place where the accident herein occurred. Weighing the testimony as a whole, we are inclined to believe that the sidewalk was broken and a ditch opened which was not cemented but was filled with loose sand and with pieces of old concrete dug out of the sidewalk. A hole or depression remained there which was superficial and had irregular contours, being about 30 inches long, 24 inches wide and 2 inches deep. The work was inspected by the engineers of the defendant municipality. On March 4, 1940 somewhere between 3 and 4 p. m., the plaintiff, who was then 59 years, was walking on this sidewalk, in a northerly direction from Fernández Juncos Avenue to Ponce de León Avenue, talking to her friend, Eufrasia Igaravidez. When she came to the said hole or depression her left foot went into it, she tripped on something in the hole and fell so violently that she could not get up. She was picked up by some other people and taken to the San José Hospital which was nearby. As a result of the fall the plaintiff suffered a total fracture of the right femur which required that she be hospitalized and remain in bed for more than 3 months, in a cast; she had to remain in a very uncomfortable position, face upward, without being able to move and with her leg in an awkward position. Dr. Seín testified that this type of injury did not heal permanently and that the joinder of the bones is generally incomplete. It was the opinion of the expert that she would be partially and permanently incapacitated and that the fractured leg would be shorter than the other.''

In resolving the conflict in the testimony the district court set forth that it believed ''the disinterested witnesses of the

plaintiff, Eufrasia Igaravidez, Luis Ramos, who worked for Hettinger & Co., and Juan Pérez, employee of Miranda Hnos.,'' and decided that Hettinger & Co. had been negligent in permitting its employees, after having opened the sidewalk, to leave the hole covered with earth and pieces of concrete and in not cementing it. It also decided that the Government of the Capital was negligent in permitting the defect in the sidewalk to exist without fixing it for about a year and without the municipal authorities taking any steps despite the fact that they had engineers charged with the duty of inspecting the work done by Hettinger & Co.

We have carefully read the extensive transcript of evidence and we are of the opinion that the errors alleged were not committed, since the conclusions of fact reached by the trial court are fully sustained by the testimony and nothing contained therein enables us to hold that error was committed when the court decided the conflict in favor of the plaintiff. The fact that there was a hole in the sidewalk was demonstrated not only by the testimony of witnesses for the plaintiff, but also by the photograph presented by the defendant (Exhibit ''A''), Hettinger & Co. having been the only entity which performed any work in that street. It is really somewhat unusual for the defendants to insist on denying a fact so obvious as the existence of the hole in the sidewalk and at the same time argued that because of its size and depth they were not negligent. It is evident that the plaintiff tripped and fell because she had inserted one of her feet in the earth and loose concrete covering the hole, irrespective of whether it was her right or left foot. In the same way, the fracture and the damages she suffered are also plain.

 We turn to a consideration of the contention of the appellants that the legal conclusions of the trial court are erroneous.

In the first place it is contended that the plaintiff was guilty of contributory negligence: 1, in not noticing the hole

and 2, in not walking on a different street if she knew that work was being performed on Figueroa Street, as she testified.

Although the plaintiff testified that she knew that the sewage job was being performed on Figueroa Street, there is nothing in the proof to show that she knew prior to the day of the accident that there was a hole in the sidewalk. The street was open to public transit. What is required of a pedestrian who has a right to walk on a public street is that he take reasonable care under all the surrounding circumstances. He is not required to walk and to gaze continuously at the ground in order to avoid any possible accident which might occur owing to the negligence of a third person or of the municipality. Likewise he does not necessarily have to walk on a street other than that in which the accident occurred, even if he knows the dangerous condition of the latter. To fail to take these precautions does not *per se* constitute contributory negligence. 7 McQuillin Municipal Corporations (2d ed.) 274, §3014; *Montval* v. *López Hermanos, S. en C.,* 41 P.R.R. 437; *Cote* v. *City of Hartford,* 23 A. (2d) 868 (Conn., 1942); *Emmey* v. *Stanley Co. of America,* 10 A. (2d) 795 (Pa., 1940). The Restatement of Torts, Vol. 2, Negligence, §473, states the rule in this manner:

"If the defendant's negligence has made the plaintiff's exercise of a right or privilege impossible unless he knowingly exposes himself to a risk of bodily harm, the plaintiff is not guilty of contributory negligence in so doing unless the risk is unreasonable."

A pedestrain is not guilty of negligence unless he knows not only of the defect in the street or sidewalk but also of its dangerous character, in order to hold as a question of law that he did not take reasonable precautions to avoid the injury. As was said in the case of *Nicholson* v. *City of South Omaha,* 77 Neb. 710, 110 N.W. 558: ". . . It is not the plaintiff's knowledge of the defect in a sidewalk or street that precludes his recovery, but his want of such care as a prudent man would exercise in view of the danger."

See also §466 of the Restatement, *supra,* its commentaries and application, as set forth in our opinion in *Font* v. *Viking Construction Corporation,* 58 P.R.R. 691, 699–700.

It cannot be held, in accordance with the facts established in this case, that the risk which the plaintiff assumed in exercising her right to walk on Figueroa Street can be characterized as unreasonable. The type of hole in the sidewalk filled with earth and stones was not such that put her on notice of its dangerous character in order to obligate her to take unusual precautions to avoid the damage that resulted from walking on it. The lower court did not err in holding that the plaintiff was not contributorily negligent.

■ In the fourth assignment of error the appellants contend that the existence of a slight depression in a sidewalk of the city does not make responsible the Government of the Capital or the party which allegedly caused the depression.

The appellants cite in their brief many cases in which the courts have held that holes of two inches or of greater depth are not sufficiently dangerous to make the city responsible. Those cases present different factual situations, and they hold only that under the peculiar circumstances of each case there was no negligence by the defendant.

It is true that there is no obligation on the part of a municipality to maintain its streets and sidewalks completely perfect. The law requires only that the municipality maintain them in a condition of reasonable security inasmuch as the municipal corporation is not an insurer of pedestrians. 7 McQuillin 6, §2902. Whether a sidewalk is in a condition of reasonable security or not is a question of fact to be decided by the court in accordance with the testimony. And in determining that question in a case like the instant case, there should be taken into consideration, among others, the following circumstances: the width, length, and depth of the hole; the width of the sidewalk; whether the street is one on which many people walk; whether the hole is of such a nature that it is not clearly visible to pedestrians walking

with the aforesaid reasonable care. Nevertheless, as was said in *Emmey* v. *Stanley Co., supra:* ". . . no definite or mathematical rule can be laid down as to the depth or size of a sidewalk depression necessary to convict a municipality . . . of negligence in permitting its continued existence."

A case very similar to the instant case was that of *Balkwill* v. *City of Stockton,* 123 P. (2d) 596 (Cal., 1942), in which a lady 59 years old was awarded $8,500 as damages for the fracture of the femur resulting from falling in a hole in a sidewalk, the said hole being only four or five inches long, two inches wide, and from a half to two inches deep. The court decided that although a municipality is not responsible for injuries resulting from small defects in the sidewalks, "the hole was large enough to catch the heel of a pedestrian so as to cause a serious accident. It proved to be actually dangerous in this case."

The depth of the hole or depression is therefore not, as the appellants allege, the only thing to consider in these cases. Rather we must examine all of the aforesaid surrounding circumstances. This was done by the trial court which, in our judgment, did not err in this respect.

■ The appellants argue that the duty on the part of a municipal corporation to keep its streets and sidewalks in a condition of reasonable safety is one imposed or accepted by the common law as an exception to the rule that in the exercise of governmental functions, for the benefit of the community, such an entity is not liable for the negligence of its agents. The appellants contend that "the American common law is not in force in Puerto Rico in a field which has adequately been covered by insular legislation, as is the case in the field of municipal corporations."

This court has held that when a municipality, in the exercise of governmental functions, inflicts damage through the negligence of its officers or employees, it is not liable in a civil action. *Villegas* v. *Municipality of San Juan,* 19 P.R.R. 397; *Compañía Industrial* v. *Municipality of Aguadilla,*

47 P.P.R. 516; *Blanes* v. *The Capital of Puerto Rico,* 57 P.R.R. 543; but when it acts in a corporate capacity, then it is liable. *Colón* v. *The Capital of Puerto Rico,* 57 P.R.R. 15. In the *Villegas* case, *supra,* it was held that the negligence of the driver of an ambulance used by the municipal hospital service did not render the municipality liable, the service being a charitable one and, therefore, governmental in character; in the *Compañía Industrial* case, *supra,* it was held that in its operation of the fire department the municipality also acted in said capacity; and, lastly, in the *Blanes* case it was held that the street cleaning service is likewise a governmental function. On the other hand, in that of *Colón* v. *The Capital of Puerto Rico, supra,* we held that in running a system of waterworks the municipality does not exercise a governmental, but a corporate function.

This distinction between governmental and corporate functions in regard to the liability of a municipality for damages caused by the negligence of its officers or employees has given rise to pointed criticisms on the part of authors well versed in the study of the matter, their suggestions being to the effect that municipalities be held liable in all cases wherein negligence is proved. The principal reason advanced is that the citizen should not be prejudiced as the result of a legal fiction so subtle that it draws a distinction between the negligence of the driver of a municipality, so that when he drives a vehicle of a department, such as the fire department, the municipality is not liable, but that when that same driver drives a vehicle for the waterworks, the same negligence existing, the municipality is liable. For a thorough study of the matter, see Borchard: "Governmental Liability in Torts," 34 Yale L. J. 129; "Distinction Between Governmental and Proprietary Functions of Municipal Corporations," by Delmar W. Doddridge, 23 Mich. L. Rev. 325, and the recent article of Edgar Fuller and A. James Cassner, "Municipal Tort Liability in Operation," 54 Harv. L. Rev. 437.

Borchard, in the cited article, argues, correctly we think, that no reason is readily apparent for holding that public or governmental functions cannot be duly exercised unless the municipality is immune from liability for the negligence of its officers. On the contrary, he states that "it might be more convincingly argued that greater efficiency and justice would be attained by acompanying power with responsibility, and if this does not induce greater respect for law, it would at least respond more satisfactorily to a public sense of justice if losses inflicted on the individual by the wrongful act of agents of the community are spread over the community as a whole rather than allowed to rest upon the unfortunate victim alone."

In regard to the repair and maintenance of its streets, a minority of the authorities in the States of Arkansas, California, Connecticut, Maine, Massachusetts, Michigan, New Jersey, Oregon, Rhode Island, South Carolina, Vermont, New Hampshire, and Wisconsin hold that this is a governmental function and that the municipality is not liable, even at common law. In some of these states statutes have been passed imposing or limiting municipal liability in such cases. However, a majority of the states hold that the municipality is liable for accidents which occur due to the negligence of its officers and employees in the maintenance and repair of streets.

We entertain no doubt that in the maintenance of its streets and highways the municipality acts in its governmental capacity, since it drives no pecuniary benefit therefrom; however, we see no strong reason why, faithful to our adherence to the common law doctrines as to governmental and corporate acts by municipalities to which we have adverted, we should not also accept and adopt the exception to the first of said doctrines existing in the American common law.

The reason why a municipal corporation is not held liable when the function exercised is governmental is one of public convenience. This does not mean that the right of the citizen

does not exist. It only means that the citizen is denied, for reasons of public convenience, the remedy to which he would be entitled under other circumstances. What the exception which the common law has established does is to acknowledge and grant that remedy. In 7 McQuillin, Municipal Corporations 10, §2902 the reasons which the courts have given for the granting of the exception are more fully stated as follows:

"It is generally said that the liability arises by implication from the nature of the subject and the vast powers conferred upon such corporations, including the exclusive control of the, streets. The additional reason is presented in some decisions, that making and improving streets and keeping them in repair is a ministerial function and relates to corporate interests only.

"Further . . . in many cases (it is said) that the duty to repair the streets was specially imposed on the municipality by statute. . . So liability for damages is sometimes placed on the ground that exclusive control of the streets is granted the municipality by the legislature, or that the statutory duty of keeping streets in repair and free from obstructions is a mandatory and not a discretionary duty."

Although the question under discussion was not expressly raised in the Banco v. Municipality of Mayagüez, 57 P.R.R. 470, it was then held that while a bridge was wholly under the control of the municipality "the attempts of the engineer to make small repairs here and there from time to time was not a sufficient compliance by the municipality with its duty to maintain the bridge in good condition" and the judgment dismissing the complaint was reversed and $1,000 in damages was awarded to the plaintiff who only suffered serious injuries to the nose, from which she suffered for several days, as a consequence of having fallen through an aperture or hole in one of the boards of the bridge. The rule was tacitly applied which holds municipaplities liable for the negligence of its officers in not maintaining in good condition a municipal bridge which, together with the streets, forms part of the highways under its control.

The appellants finally argue that we should not hold

298

the municipalities responsible in cases of this nature because we must take judicial notice that municipalities in Puerto Rico are in a state of continual insolvency and it cannot be held ''that they must be held liable to sustain in a perfect condition all the streets and sidewalks.''

We have already said that a municipality is not required to keep its streets and sidewalks in perfect condition but only reasonably safe, since it is not an insurer of pedestrians. However, the argument as to lack of public funds to pay any judgment in a case of this nature is no defense. The cause of action which a plaintiff may have against a defendant, whether the latter be a private person, a corporation, or a municipality, does not depend on whether the defendant has money or property with which to satisfy the judgment which may be entered against the defendant. ''The determination of the amount, as a matter of law, never depends upon the capacity of the defendant to pay the same. . . ,'' was decided in *Flores* v. *Successors of Pérez Brothers,* 29 P.R.R. 977, 979, ratified in *Vázquez* v. *Laugier,* 60 P.R.R. 404.

■ The fifth assignment of error is to the effect that the court erred in holding Hettinger responsible despite the fact that the lower adopted the theory that the responsibilty of the contractor ceases when the work is finished and delivered.

This error is based on a discussion which, although very interesting, is a *dictum* of the lower court. As a matter of fact, the court had already held that the job had neither been delivered by Hettinger nor accepted by the municipality. This was because, although no work was going on any longer in Figueroa Street and installations were then being made at other locations, it was not until July of 1940 (the accident occurred March 4 of that year) that the job was formally accepted, it having been proved that the street was not paved when, in accordance with the contract, it was the obligation of the contractor to pave it. These conclusions are amply sustained by the testimony. Nevertheless, the lower court unnecessarily *assumed* that the work had been accepted, and

after citing, among others, the well-known case of *Winterbottom* v. *Wright,* 152 Eng. Rep. 402, in which the doctrine of cessation of responsibilty of a contractor to third persons after his job has been accepted originated, proceeded to consider and apply to the facts of the instant case the exception to the said doctrine involving the responsibility of the contractor when his job has created a public nuisance.

We are of the opinion that, although technically it might be contended that the error was committed, there is no merit to the contention herein, since, as we have indicated, the testimony showed that the job had not been delivered by Hettinger or accepted by the Government of the Capital. We are therefore not required to consider and determine if the lower court erred in saying that the depression or hole in the sidewalk constituted a public nuisance.

The sixth error attacks the amount of damages awarded, but the appellants limit themselves to saying that they leave that ''to the serious consideration of this court.'' They therefore allege nothing to sustain this attack. Taking into consideration the nature of the injuries received by the plaintiff and that she suffered a partial permanent incapacity, since the fractured leg has remained shorter than the other, we are of the opinion that the award of $4,000 is reasonable.

The judgment appealed from will be affirmed.

Mr. Chief Justice Del Toro did not participate herein.