[Civ. No. 6738. Third Dist. Mar. 24, 1942.]

LYDA A. BALKWILL, Respondent, v. CITY OF STOCKTON (a Municipal Corporation), Appellant.

662

Joseph C. Tope, City Attorney, and H. C. Stanley, Assistant City Attorney, for Appellant.

Ray L. Chesebro, City Attorney (Los Angeles), and Harold P. Huls, City Attorney (Pasadena), as Amici Curiae on behalf of Appellant.

J. LeRoy Johnson for Respondent.

THOMPSON, Acting P. J.—The City of Stockton has appealed from a judgment for damages in the sum of $8,500, in favor of the plaintiff, to compensate her for a broken hip resulting from stepping into a hole in the concrete sidewalk in the business portion of the city, and falling thereon. It is not contended the judgment is excessive.

For the period of a year two holes were permitted to exist in the surface of the concrete sidewalk on California Street in the business portion of Stockton. They were only a few inches apart, and were approximately four or five inches long, two inches wide and from one-half to two inches in depth. Mrs. Anna McDade testified from observation in that regard that the hole in question was about six inches long, two and a half inches wide and "almost three inches deep." She said "It seemed to be full of pulverized cement." Arthur Shaw, the City Engineer of Stockton, testified that he measured the holes after the accident occurred and that the one in question was four and five-eighths inches long, two inches wide and one-half inch deep. The plaintiff was 59 years of age. She wore glasses. About noon on the 24th day of April, 1940, she was walking along California Street in the vicinity of the Penney Store, on her way to mail a package. As she approached the point where the holes existed, she was accosted by a lady friend from a position somewhat to her rear. She turned about to respond to the greeting, and inadvertently stepped into one of the holes. Catching the heel of her shoe, she fell violently to the pavement and fractured the neck of her right femur bone. The

plaintiff's shoe was received in evidence. The leather was skinned from the heel at a point about half an inch from the bottom. The heels were neither extremely long nor slender. On the contrary, they were sensibly-shaped heels. After the accident the plaintiff was taken to a hospital where she remained for about a month. The broken bone failed to knit. A subsequent operation was necessarily performed to fasten the fractured ends in apposition. At the time of the trial, which was more than a year from the date of the accident, she was suffering severely from her injury. It is evident that she may be permanently disabled.

The hole, which caused the plaintiff to fall, had existed in the middle of the sidewalk in a business portion of the city for nearly a year before the time of the accident. Mrs. Ten Bruin, who lived in Stockton, testified that she was familiar with the street where the accident occurred and that she knew of the defective condition of the sidewalk. She said in that regard: "On one occasion I had seen a lady trip in that very same place. She fell on her knee and I helped pick her up." That was in the summer of 1939. She added, "I walked past there frequently and I always avoided that spot." Mrs. Violet Hunt, who also lives in Stockton, testified she had observed the holes in question, and in December, 1939, she stepped in one of them and turned her ankle. She also took pains to avoid the holes. There is some conflict regarding the exact size of the holes. For the purpose of this appeal we may assume the evidence of the exact measurements furnished by the city engineer should prevail over the estimates of the depth of the hole made by other witnesses, although, ordinarily, the determination of such facts is a matter for the jury where there is a conflict of evidence. Regardless of the size and depth of the holes, the question still remains as to whether the city authorities knew of the existence of the holes and that they constituted a hazard to the safety of pedestrians.

For the purpose of showing that the defendant had knowledge of the existence of the alleged dangerous and defective condition of the sidewalk the city engineer was called as a witness and testified that the city regularly employed an inspector whose duties it was to periodically examine the sidewalks for holes, cracks or defects which might be dangerous to pedestrians, and that the inspector actually examined the sidewalk on California Street, where the accident occurred,

on the 12th day of March prior to the date of the accident, but reported no holes or defects. Mr. Cowell, the city sidewalk inspector, testified that he examined the sidewalks in the vicinity of the accident on March 12, 1940, but observed no holes or defects "which he considered dangerous." The evidence shows that the particular holes in question had existed for a year or more previous to the accident. They were repaired immediately thereafter.

Regarding the legal liability of the city for the damages resulting from the accident, two questions are primarily involved, namely: Was the hole in the sidewalk, into which the plaintiff stepped, a dangerous defect, and did the city have either actual or constructive knowledge thereof? Both of these questions were determined by the jury adversely to the defendant.

We are of the opinion this court may not determine on appeal, as a matter of law, that the hole in the sidewalk which caused the injuries sustained by the plaintiff was not so dangerous as to create a liability on the part of the city for negligently permitting it to remain without repair. In other words, under the circumstances of this case, the implied findings of the jury that the hole was dangerous and that the city had knowledge of its existence are binding upon this court for the reason that they are supported by substantial evidence.

It is true that a city will not be held liable for injuries resulting from slight defects in a sidewalk from which it may not reasonably be anticipated accidents may result. (*Whiting* v. *National City*, 9 Cal. (2d) 163 [69 Pac. (2d) 990] ; 7 McQuillin's Municipal Corporations (2d ed.), p. 312, sec. 3033, note 76.) Holes, cracks and defects in sidewalks may be so slight and unsubstantial that a court should determine, as a matter of law, that accidents could not be reasonably anticipated therefrom. In the present case, the hole was large enough to catch the heel of a pedestrian so as to cause a serious accident. It proved to be actually dangerous in this case. It had previously caused other similar accidents, although they were without serious results. The holes existed in the surface of a smooth, sloping, concrete walk in the business portion of the city where many persons were accustomed to travel. They were clearly observable. Others had seen them and knew of their presence. They were apparently dangerous enough so that other citizens deliberately avoided them. Under such

circumstances we may not say, as a matter of law, that the defects were not dangerous. ▮ Nor may we hold that the city was not chargeable with knowledge of their existence. The city sidewalk inspector did not say that he failed to observe the holes in question. All that he testified to was that he did not see any holes in that walk "which he considered dangerous." There is ample evidence from which we must assume the inspector saw the holes and knew they existed, or that, in the exercise of ordinary care, he should have seen them. The knowledge of the inspector, with relation to the existence of the holes, necessarily charges the city with that knowledge, since he was employed by the city for the express purpose of examining the walks for that very purpose. It was his duty to examine the walks critically for cracks, holes and other defects. We must assume the jury was warranted in finding that he actually saw and knew of the existence of the holes.

The liability of the city is based on the provisions of paragraph 2 of Statutes of 1923, page 675 (2 Deering's Gen. Laws, 1937, p. 2630, Act 5619), which reads in part:

"Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board . . . or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition . . . and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition . . ."

▮ In spite of the fact that defects in sidewalks may be so slight or trivial as to create mere questions of law regarding their dangerous nature, it is, nevertheless, true that when the evidence is so conflicting that different conclusions may reasonably be drawn regarding the dangerous character of the defects, or concerning the question of notice thereof on the part of the officers of the city, the determination of such questions should be left to the jury and their conclusions should not then be disturbed on appeal. (*Ackers* v. *City of Los Angeles,* 40 Cal. App. (2d) 50 [104 Pac. (2d) 399] ; 25 Am. Jur. 876, sec. 589; 119 A. L. R. 168, note; 9 Cal. Jur., 10-Year Supp., 641, sec. 194.) In the authority last cited it is said in that regard:

"Whether or not a county, municipal corporation or school

district is liable for an injury caused by a defective or dangerous condition of streets, buildings or other public property should ordinarily be determined by the jury from the facts of the particular case. Thus the jury should ordinarily determine, as a question of fact, whether a dangerous or defective condition existed, whether the plaintiff's injury proximately resulted from such condition, whether the proper authorities had notice or knowledge of the condition, and whether a city through the persons 'having authority to remedy such condition,' failed or neglected for a reasonable time after acquiring knowledge of the defective condition, to remedy the same. However, a nonsuit may be granted if the evidence wholly fails to show liability upon the part of the defendant.''

▮▮▮ Under the circumstances of this case, we may not say, as a matter of law, that the hole which is here involved was not dangerous, nor that the city authorities should not have reasonably anticipated that it was hazardous. Certainly we may not hold that reasonable persons could not differ in their conclusions regarding those questions. If those are proper questions for the jury, under the circumstances of this case, this court has no right to substitute its judgment for that of the jury. The hole in question was actually dangerous, for the plaintiff broke her hip on that account. It caused two other ladies to fall. The city promptly repaired the hole after plaintiff was injured. Eleven jurors and the trial judge believed that liability on the part of the city was adequately shown. A motion for new trial was denied. We must assume the city had actual knowledge of the existence of the holes at least a month and a half before the accident occurred, which was ample time within which to have repaired the defects. The inspector actually examined that very walk, in search of defects, on March 12, 1940. The accident did not occur until April 24th. The holes were plainly visible. We must assume he saw them. The plaintiff is not bound by the inspector's opinion that the holes were not dangerous enough to require repairing. We therefore conclude there is sufficient evidence to sustain the verdict and judgment against the city.

The facts of no two cases of this character are exactly alike. Each must be determined on its own particular facts. Scores of cases from numerous jurisdictions, based on somewhat similar facts, are reported, as indicated by the elaborate annotation of that subject which appears in 119 A. L. R. at page

161. The same questions have frequently arisen in this state. In support of its contention that non-liability of the city, under the circumstances of this case, should be determined as a matter of law, the appellant relies chiefly on three cases: *Nicholson* v. *City of Los Angeles,* 5 Cal. (2d) 361 [54 Pac. (2d) 725] ; *Whiting* v. *City of National City, supra,* and *Balmer* v. *City of Beverly Hills,* 22 Cal. App. (2d) 529 [71 Pac. (2d) 854]. Each of these cases appears to have been reversed on the theory that the cities had no actual notice of the defects, and that constructive notice thereof would not be presumed from the mere fact that the defects had existed for short periods of time prior to the accidents. In other words, these cases were apparently reversed for lack of evidence constituting constructive notice of the defective sidewalks. In the Nicholson case it is said in that regard:

"The rule as stated in the cases relied upon by the respondent is that the existence of a conspicuous defect or dangerous condition of a street or sidewalk for a considerable length of time will create a presumption of constructive notice. . . . There is no evidence of any prior event which would put the city on inquiry as to the existence of a dangerous break at this point, and aside from the testimony that it had existed for several months, that it was about an inch and one-half high, and that the plaintiff thought it was caused by the root of a tree growing in the parking beside it, there is no testimony with regard to the defect itself. This, we think, is insufficient to sustain a finding that had the city fulfilled its duty of reasonable inspection and supervision of the streets of the city as a whole it would have had actual knowledge of the break."

In the present case actual inspection of the very sidewalk where the hole existed was made about six weeks before the accident occurred.

The Whiting case was clearly reversed on the same ground that constructive notice of the presence of a defect in the sidewalk will not be presumed from its mere continued existence for a brief period of time. The court concludes its opinion in that case by this statement:

"In view of the holding in the Nicholson case and the pertinent authorities elsewhere we conclude that the constructive notice found by the court is insufficient to support the judgment."

The Balmer case was likewise reversed for lack of evidence

of constructive notice of the existence of the dangerous defects. That case was specifically determined on the authority of the Whiting case. No previous inspections of the walks were made prior to the accidents in any of these reversed cases. At least, the weight of recent California authorities in this character of action favors the support of the judgment in this case.

Contrary to the preceding cases, judgments for damages recovered under somewhat similar circumstances were supported in four recent California cases. In three of them hearings by the Supreme Court were denied. (*Ackers* v. *City of Los Angeles, supra*; *Barrett* v. *City of Sacramento,* 128 Cal. App. 708 [18 Pac. (2d) 356]; *Hook* v. *City of Sacramento,* 118 Cal. App. 547 [5 Pac. (2d) 643]; *Allen* v. *City of Los Angeles,* 43 Cal. App. (2d) 65 [110 Pac. (2d) 75].)

We therefore conclude that the questions of the existence of dangerous defects in the sidewalk, the knowledge thereof on the part of the city authorities, and the consequent liability of the city for negligence in failing to repair the hole in question until after the accident occurred were properly submitted to the jury, and that its verdict and the judgment in this case are adequately supported by the evidence.

 The defendant's motion for new trial on the ground that the verdict was adopted by means of chance, contrary to subdivision 2 of section 657 of the Code of Civil Procedure, was properly denied. The motion was heard on affidavits of the jurors. There is a conflict of evidence regarding the method by means of which the verdict was reached. The verdict awarded plaintiff damages in the sum of $8,500, which sum was confirmed by the jury in open court. One juror averred that the amount which was inserted in the verdict was the result of dividing by twelve the aggregate sum of the several amounts placed on separate ballots by the individual jurors, without subsequent consideration or balloting thereon, and with the previous agreement that sum should become their verdict. Two other jurors averred that the quotient thus obtained "was to be the verdict of the jury," but they failed to state that it was adopted *without further consideration.* On the contrary, eight jurors aver, in separate affidavits, that it was not a quotient verdict. They assert that a quotient sum of $6,500 or $7,000 was obtained as a mere basis for subsequent discussion, and that after subsequent consideration and balloting ten jurors agreed to adopt the different figure

of $8,500 as their award of damages, which sum was thereupon inserted in the verdict, returned to the court and approved by the jury in open court.

The overwhelming weight of evidence therefore supports the conclusion that the verdict was not what is commonly termed a quotient verdict, nor was it obtained by resorting to chance. The court therefore properly denied the motion for new trial on that ground. ▉ The trial judge has a sound discretion in granting or denying a motion for new trial even though the motion is based on affidavits. In the absence of clear abuse of such discretion the denial of a motion for new trial, which is based on affidavits, will not be disturbed on appeal. (*Spadoni* v. *Maggenti,* 121 Cal. App. 147, 156 [8 Pac. (2d) 874].)

▉ A quotient verdict does not necessarily constitute a chance verdict, provided the average sum which is thus procured is not adopted without subsequent consideration or balloting by the jurors. If, after a quotient figure is obtained, the jurors discuss and ballot upon the adoption or rejection of that sum, it is conclusive evidence they were not bound by a previous agreement to accept it without further consideration. Certainly an award of damages may not be said to constitute a quotient verdict, when the average sum thus obtained was subsequently actually challenged to another and different amount, as the majority of the jurors averred was done in the present case. Under the circumstances related by most of the jurors in this case, the verdict which was returned was neither a quotient verdict nor a chance verdict. (*Ham* v. *County of Los Angeles,* 46 Cal. App. 148, 153 [189 Pac. 462] ; *Mirabito* v. *San Francisco Dairy Co.,* 1 Cal. (2d) 400 [35 Pac. (2d) 513] ; 52 A. L. R. 44, note; 23 Cal. L. Rev. 218; 8 So. Cal. L. Rev. 163.) In the Ham case, *supra,* the amount of a quotient verdict was held to be void, on the theory that it was the result of chance, because it was adopted "without further discussion, balloting or assent" of the jurors. But it was therein significantly said that:

"It is true . . . that there is no impropriety in the jurors making an average of their individual estimates as to the amount of damages for the purpose of arriving at a basis for discussion and consideration, nor in adopting such average if it is subsequently agreed to by the jurors; but to agree beforehand to adopt such average and abide by the

agreement, *without further discussion or deliberation,* is fatal to the verdict." (Italics added.)

The purpose of the statute which prohibits the rendering of a verdict which is the result of chance is to preserve the benefit to litigants of the independent judgment of jurors with respect to either the party who is to prevail or the amount of damages to be awarded. Chance verdicts are destructive of the very foundation upon which the right of trial by jury is based. But the amount which will adequately compensate one for personal injuries is not usually susceptible of mathematical calculation. Reasonable men will differ greatly in that regard. The honest and fair judgment of jurors is all that may be expected in such litigation. There is no objection to the use of a quotient figure as a basis for discussion by the jurors, if it is subsequently fairly and freely considered or balloted upon. Certainly it is not objectionable or fatal if a different figure is subsequently adopted as the verdict of the jury. The motion for new trial on the ground that the verdict was the result of chance was properly denied.

We find no prejudicial misconduct of counsel for the plaintiff in his argument to the jury. The transcript discloses the fact that, in the course of his argument, the attorney was interrupted by a statement from defendant's attorney that, "Your Honor, I don't think it is proper to go outside the evidence in this case." The court replied, "No, you confine yourself to the evidence in this case." The challenged argument does not appear in the record. We have no way of ascertaining what counsel said to the jury nor can we determine whether the statements were within the evidence. The defendant failed to assign the remarks as prejudicial, and the court was not asked to direct the jury to disregard them.

It was not prejudicial for plaintiff's attorney, in the course of his argument, to quote the language of the Supreme Court in a similar suit for damages growing out of injuries sustained by falling on a defective sidewalk as follows: "A drunk man is as much entitled to a good sidewalk as a sober one, and much more in need of it." He was merely illustrating his contention that every pedestrian was entitled to assume that a city would not knowingly permit its sidewalks to remain in a dangerous condition. It does not appear this statement was objected to. It was not assigned as prejudicial. It may have been an extreme illustration, but it does not ap-

pear to have been beyond the realm of legitimate argument. Nor do we see how it could have been prejudicial.

Moreover, the appellant waived its objection to the challenged language by failing to assign it as prejudicial, and by omitting to ask the court to instruct the jury to disregard it. (*Kershaw* v. *Tilbury*, 214 Cal. 679, 690 [8 Pac. (2d) 109]; *Rogers* v. *Foppiano*, 23 Cal. App. (2d) 87, 95 [72 Pac. (2d) 239]; *People* v. *Ward*, 40 Cal. App. (2d) 143, 150 [104 Pac. (2d) 537].)

The appellant contends the court committed reversible error in giving to the jury an instruction at the request of the plaintiff in which it was assumed there was a "dangerous and defective" condition of the sidewalk. In view of the entire charge to the jury, we are of the opinion the challenged instruction could not have misled the jury in that regard. This instruction reads in part:

"It is for you to determine from the evidence whether or not the city had notice of the dangerous and defective condition *alleged in the complaint,* and if it did, whether it failed to remedy the condition within a reasonable time.

"Notice of such a condition may be of two kinds, namely, actual notice or constructive notice. Actual notice is where the dangerous or defective condition, *if any,* is known to the City Council or to the persons or officers of the city whose duty it is to correct such conditions. Constructive notice is notice received by virtue of facts and circumstances sufficient to put the city officials, as reasonable persons, on notice of the actual condition of the sidewalk *which is alleged to be defective and dangerous.*

"If the evidence satisfies you that the city had constructive notice *of the alleged defective and dangerous condition,* the requirements of the law are met the same as if the proof satisfies you that the city had actual notice thereof."

It is apparent that the foregoing instruction purports to deal only with the subject of actual or constructive notice of the alleged defect so as to charge the city with knowledge thereof. Under the proper subject, the jury was elsewhere clearly instructed that it possessed the sole province of determining from the evidence whether a defective or dangerous condition of the sidewalk did exist, and that if they were not satisfied it did exist, it then became their duty to return a verdict in favor of the city. For instance, the third instruction following the previously-challenged one informs the jury

that the city is not liable for any and all defective sidewalks even though injury may be sustained thereby. It then declares that ''If you find from the evidence that the sidewalk at the place of the alleged injury was in a reasonably safe condition for use by pedestrians, then you will find for the defendant.'' Moreover, the jury was also clearly informed that the burden was on the plaintiff to prove the affirmative of every issue raised by the complaint. The chief issue at the trial was whether there existed in the sidewalk where the plaintiff was injured a defective and dangerous condition. The very challenged instruction clearly indicates that the court did not charge the jury, as a fact, that a dangerous and defective condition of the sidewalk actually existed. The second paragraph, in reciting the character of notice that would charge the city with knowledge said that ''actual notice is where the dangerous or defective condition, *if any*,'' is known to the city. Twice in succeeding paragraphs of the same instruction the ''dangerous and defective condition'' is referred to as that ''which is *alleged*'' in the complaint.

We are of the opinion the challenged instruction is neither misleading nor erroneous. We are perfectly satisfied the jury could not have been misled thereby. The giving of that instruction is certainly not reversible error.

The judgment is affirmed.

Steel, J., and Tuttle, J., concurred.

A petition for a rehearing was denied April 21, 1942, and appellant's petition for a hearing by the Supreme Court was denied May 21, 1942.