255 P.2d 191

## CITY OF FLAGSTAFF et al. v. ASSOCIAT-ED DAIRY PRODUCTS CO. et al.

No. 5656.

Supreme Court of Arizona.

March 30, 1953.

Orinn C. Compton, City Atty., Flagstaff, for appellants.

Snell & Wilmer, of Phoenix, for appellees.

PHELPS, Justice.

From a judgment of the superior court of Coconino County in favor of plaintiffs-appellees after granting their motion for summary judgment, defendants appeal.

The Associated Dairy Products Company, a corporation, Arizona Milk Producers Association, a corporation, and Lloyd Loftus, hereinafter referred to as plaintiffs, brought an action in the above court against the city of Flagstaff, a municipal corporation, the mayor and common council, and others, hereinafter referred to as defendants, seeking a declaratory judgment as to the validity of Resolution No. 273 adopted, and Ordinance No. 342 passed by the common council of the city of Flagstaff in 1946, purporting to establish rules and regulations as the "Milk Code" of the city of Flagstaff, and providing penalties in said ordinance for the violation thereof.

The ordinance and resolution in question are sweeping in character and provide, among other things, for the inspection by the health officers of the city of Flagstaff of all dairy plants (wherever situated) from which milk or milk products were to be consumed within the city; that if such inspection of said milk plant or plants should result in a degrading of said farm or milk plant or plants that the distribution, sale and consumption of milk or milk products therefrom should be forbidden within the city.

The ordinance and resolution further purported to regulate the construction of

dairy barns wherein cows were milked, to regulate the surrounding area including cow yards, milk houses and their construction, requiring that toilets be made available in the dairy barns, regulate the water supply thereto and provide for the method of taking care of milking utensils to be used in connection with the dairy, including the method of cleaning, storage and handling thereof; the manner of milking the cows and the preparation of cows for milking, regulating the clothing of milkers, milk stools to be used, etc. They completely regulate and govern production and handling of milk and milk products from the time it is taken from the cow until it reaches the consumer, despite the fact that the plants from which plaintiffs procure their milk are located in Maricopa and Pima Counties.

The action was originally instituted in 1950 as being in conflict with the provisions of article 9, chapter 50, A.C.A. 1939, sections 50–901 to 50–954 inclusive.

During the pendency of such action the Twentieth Legislature passed chapter 153, Session Laws of 1951, which constituted a new dairy code, repealing article 9, chapter 50, A.C.A.1939, in its entirety. Plaintiffs thereafter filed a supplemental complaint asking for a declaratory judgment concerning the validity of said resolution and ordinance when considered in connection with chapter 153, supra. Defendants did not answer but both defendants and plaintiffs filed motions for summary judgments in their behalf upon the ground that there were no genuine issues as to any material fact alleged in the supplemental complaint. The court denied defendants' motion and granted plaintiffs' motion for summary judgment and ordered judgment for plaintiffs entered thereon declaring the ordinance and resolution void.

Defendants assign two errors, (1) that the court erred in overruling defendants' motion for summary judgment, and (2) that the court erred in granting plaintiffs' motion therefor and entering judgment thereon.

The primary question for our consideration is whether the legislature in enacting chapter 153, Laws of 1951, regulating the production, processing, distribution and marketing of milk and milk products, appropriated the field pertaining to milk legislation to the exclusion of municipalities.

Starting with the premise (1) that municipalities have only such legislative powers as have been expressly, or by necessary implication, delegated to them by the legislature, and (2) that the powers so delegated will be strictly construed, Clayton v. State, 38 Ariz. 135, 297 P. 1037, we will examine the statutes to see what legislative powers have been delegated to cities and towns incorporated under the general laws of the state under which the city of Flagstaff was incorporated.

Defendants rely in part upon section 16–207, subd. 26, A.C.A.1939, providing that the common council shall have power:

"To do all other acts, and prescribe all other regulations, which may be *necessary or expedient* for the prevention or suppression of disease". (Emphasis supplied.)

and section 16–601, subd. 7, A.C.A.1939, providing that:

"In addition to the powers already vested in cities by their respective charters and by the general laws, cities and their common councils shall have the following powers:

\* \* \* \* \* \*

"7. To regulate the sale of meats, poultry, fish, butter, cheese, lard, fruit, vegetables and other provisions, and to provide for and regulate the inspection and the place and manner of selling the same, and for the inspection of hay, grain, flour, meal and other provisions;"

It will be observed that in neither section 16–207, subd. 26, nor section 16–601, subd. 7, supra, is there any express authority given to municipalities to pass such an ordinance as the one in question relating to the regulation of production, processing, distribution and marketing of milk and the regulation of dairy equipment. We find nothing in the record to make the enactment of the ordinance passed by the city council of Flagstaff attempting to exercise the broad powers therein enumerated regulating construction of dairy barns, etc., in the various counties of the state "necessary or expedient for the prevention or suppression of disease". Nor are we able to read into the above provisions an express delegation of power relating to the public health from which the grant claimed by defendants can be implied. As we have stated in Associated Dairy Products Co. v. Page, 68 Ariz. 393, 206 P.2d 1041, 1043:

"Implied powers do not exist independently of the grant of express powers and the only function of an implied power is to aid in carrying into effect a power expressly granted. \* \* \*" See Skelly Oil Co. v. Pruitt & McCrory, 94 Okl. 232, 221 P. 709; City of Madison v. Daley, C.C., 58 F. 751, 755.

" 'An express authority is one given in direct terms, definitely and explicitly, and not left to inference or to implication, as distinguished from authority which is general, implied, or not directly stated or given.' Fergus v. Brady, 277 Ill. 272, 115 N.E. 393, 396 \* \*."

By the term "express power" is meant: "that authority which confers powers to do a particular thing set forth and declared exactly, plainly and directly with well defined limits. \* \* \*" Associated Dairy Products Co. v. Page, supra.

It is contended by defendants that the cases of City of Phoenix v. Breuninger, 50 Ariz. 372, 72 P.2d 580; and Gardenhire v. State, 26 Ariz. 14, 221 P. 228, are authority

for their position. We pointed out in Associated Dairy Products Co. v. Page, supra, that those cities were operating under a freehold charter which gave them express authority to pass such ordinances and that in the Breuninger case the legislature in enacting the dairy code of 1931, sections 50–901 to 50–954, inclusive, recognized the existence of a Phoenix city ordinance adopting in toto the United States public health service standard milk ordinance, that the city was issuing permits under said ordinance and the legislature expressly approved it.

In City of Phoenix v. Breuninger, supra [50 Ariz. 372, 72 P.2d 582], the court in discussing section 14, chapter 82, Session Laws of 1931, section 50–914, A.C.A.1939, providing that:

"* * * In all cases where the requirements of such standard ordinance [the United States public health service standard milk ordinance] shall exceed or equal those of the state dairy law such ordinance requirements shall be in effect within the jurisdiction of such communities as shall be operating under such ordinance. In all cases where the requirements of such state law shall exceed those of such standard ordinance such state law shall be in effect. * * *"

said that the above language implies that if a municipality desires to impose more stringent regulations in the distribution of milk than provided for in the state law it could do so, although it could not impose less stringent regulations.

The court further held that:

"Since the city of Phoenix had the express charter power to regulate the sale of milk within the city, we think, under the authority of the cases above cited, it had concurrent power with the state to legislate upon the subject, provided, always, of course, that such legislation did not contradict some rule laid down by the state. * * *"

All of article 9, chapter 50, of the Session Laws of 1931 including section 14, section 50–914, was repealed by chapter 153, Session Laws of 1951, and therefore there no longer exists any express or implied authority in municipalities to regulate such business by the imposition of any restrictions whatever.

It is our view that the legislature in enacting chapter 153, supra, recognized the condition that would arise by a continuation of municipal regulation of the production, processing and distribution of milk in the state which, as pointed out by Justice LaPrade in Loftus v. Russell, 69 Ariz. 245, 212 P.2d 91, 98, would result in as many principalities as there are municipalities in the state

"* * * with conflicting, burdensome, and intolerable trade barriers in a field of state-wide concern that had theretofore received more than passing consideration as evidenced by the enactment of the state dairy code. * * *".

Justice LaPrade's reference was to a county health board but the same result would follow whether it be a municipality, a county or a county health board.

We held in Clayton v. State, 38 Ariz. 466, 468, 300 P. 1010, that:

" * * * Where the subject is one of local interest or concern, or where though not of local concern the charter or legislation confers on the city express power to legislate thereon, both jurisdictions may legislate on the same subject. Where, however, the subject is of state-wide concern, and the Legislature has appropriated the field and declared the rule, its declaration is binding throughout the state."

We further said in Associated Dairy Products Co. v. Page, supra, that:

" * * * The question of public health is so clearly one of statewide concern that no citation of authority should be necessary to support it. * * *"

It follows that since the regulation of producing, processing, distributing and marketing milk is a health measure and since public health is of state-wide concern, unless we can find in the language of chapter 153, Session Laws of 1951, supra, an express delegation of power to municipalities to regulate such business the ordinance and resolution under attack in this litigation must be declared to be invalid.

Counsel for defendants urge that the language found in section 4, subsection (c), chapter 153, supra, providing that:

"(c) Except as provided in this subsection, application for a license to produce grade A milk for human consumption shall be made in the manner prescribed by subsection (a) and shall be valid until revoked for failure to comply with the provisions of this Act relating to the production of such milk. * * * *Any person holding a permit issued by a municipality operating under the provisions of the standard milk ordinance of the United States bureau of public health shall be deemed to have a permit meeting the requirements of this Act."* (Emphasis supplied.)

indicates a legislative intent that municipalities would continue to have authority to pass regulatory milk ordinances.

We cannot agree with such an interpretation of the language; first, because it is not an express delegation of power of any kind; second, the act contains no express grant of power to municipalities which requires the aid of the above language to carry it into effect, thus giving it the dignity of an implied power; and third, for the reason that we believe the intent of the legislature in incorporating the above language into the act was only to facilitate the inaugural operation of the act insofar as the procurement of a license

was concerned with as little inconvenience to dairy operators as possible.

Defendants further contend that section 26(b) of chapter 153 providing for the state dairy inspector to make the enforcing officers of a city or county health department special dairy inspectors in such city or county is further evidence of the legislative intent that municipalities were to continue to exercise regulatory powers over the dairy business. We believe such a conclusion does not logically follow but on the other hand it indicates to us that the legislature intended that the act should operate in all municipalities and that the dairy commissioner was authorized to make the enforcing health officers in such cities and counties state deputy inspectors for the purpose of enforcing the act of the legislature. If the regulatory ordinance of the city is to remain in full force it appears to us that no reason would then exist for the city health officers to act as special dairy inspectors under the state dairy commissioner to enforce the state law.

We therefore hold that the ordinance and the resolution are invalid for the reason that public health is of state-wide concern and that the state has appropriated the field to the exclusion of municipal regulation.

Judgment affirmed.

STANFORD, C. J., and LA PRADE, UDALL and WINDES, JJ., concur.