[Civ. No. 15564.   First Dist., Div. One.   Dec. 14, 1953.]

EDNA B. NEWMAN, Respondent, v. COUNTY OF SAN MATEO, Appellant.

Millington, Dell'Ergo, Weeks & Morrissey and Wayne R. Millington for Appellant.

Mack, Wilson & Jorgenson for Respondent.

PETERS, P. J.—Plaintiff Edna B. Newman brought this action under the Public Liability Act (Gov. Code, § 53051) for damages for injuries resulting from falling upon a claimed defective sidewalk under the control of defendant county. The jury brought in a verdict of $5,000. Defendant appeals from the judgment entered on the verdict, from the order denying its motion for judgment notwithstanding the verdict, and from the order denying its motion for a new trial. The order denying a motion for a new trial is not appealable, and the appeal therefrom must be dismissed.

It was stipulated that the sidewalk in question is under

the jurisdiction of appellant. The evidence shows that in San Mateo County the county roads and sidewalks are maintained by the county engineer's office, and that regular crews are employed for this purpose.

The respondent lives on Mills Avenue in Menlo Park, near its intersection with the Alameda de las Pulgas. The accident occurred on the Alameda, a street the respondent traversed at least twice daily on her way to and from work. The Alameda has but one sidewalk, on the east side. This sidewalk had been constructed in 1948 by employees riding in county trucks of "hard top" consisting of rock and tar, and seemed to be a form of asphalt.

Respondent testified that by January of 1950 the sidewalk was badly deteriorated, full of holes and ruts, and that, because it was badly broken, it was uneven and varied from 8 inches to 2 feet in width. During that year, by telephone, she complained of these conditions to the Menlo police, to a private neighborhood policeman, to the Atherton police, and to the sheriff's office of San Mateo. As to this last complaint the respondent testified that she told the sheriff's office of the conditions existing along the whole length of the sidewalk and requested that the sidewalk be made safe. Under date of January 20, 1950 (the accident happened on December 30, 1950), the chief deputy of the sheriff's office wrote to respondent acknowledging receipt of the oral complaint and stating "we have relayed your information to the County Engineer and he called at your home on January 19, 1950 and was unable to contact you." Respondent testified that she found the engineer's card under her door and that on January 21, 1950, she saw four men looking over the sidewalk. No work was done upon the roadway or sidewalk after this inspection, and conditions continued to get worse.

Respondent also testified that in June or July of 1950 she was walking down the Alameda on her way to work when she observed a deep hole 4 to 6 inches deep in the pathway about the size of, and apparently caused by, a horse's hoof. She called this hole to the attention of a woman who lived in a house fronting on the path, and that night she noticed that someone had filled it with loose gravel and sand. It was this hole that respondent claims caused her to fall on December 30, 1950, at about 6:30 p. m.

At that time respondent was walking north along the path in the company of her then 11-year-old son. It had rained hard during the afternoon, but was not then raining.

The night was dark and cloudy. There were no street lights in or near the area of the accident. It was so dark that respondent, while walking, could not see her feet. Respondent was wearing galoshes, was carrying her purse and raincoat in one hand, and a package in the other. Her shoes had medium heels. While walking in the path respondent suddenly fell and suffered the injuries of which complaint is made. When asked what caused her to fall respondent testified: "A hole in the road. I must have stepped in it, I couldn't see it." She also stated that she was so badly injured by the fall that she must have stepped into a hole.

Respondent testified that she stayed on the ground for some time after she had fallen because she was in great pain and feared that she had broken her arm and shoulder. Her son testified that as he crouched over his mother he saw the hole in question about 6 inches from her feet. Respondent discovered the hole when she tried to get up, and testified that it was the same hole she had seen during the summer of that year. The rains had washed out the sand and gravel and the hole was filled with mud and water. The son testified that the area immediately adjacent to the hole was pretty clear and that there were no loose rocks nearby. The hole was the only thing in the general area that could have caused the fall. Three photographs of the hole were introduced which show the hole and other broken spots in the path.

Respondent suffered severe and serious injuries as a result of the fall. No contention is made that the damages awarded are excessive.

Defendant, at the close of plaintiff's case, moved for a nonsuit on the ground of insufficiency of evidence. When this motion was denied, the county refused to produce any evidence at all but instead moved for a directed verdict, which was denied. Thereafter, motions for a judgment notwithstanding the verdict and for a new trial were made and denied. In denying these motions the trial judge filed a memorandum opinion in which he considered all of the contentions now made by appellant, and found them factually and legally unsound.

The first contention of appellant is that there is no evidence to establish that the hole in the sidewalk caused the accident. This contention is without merit. There is both direct and circumstantial evidence that the fall was caused by the hole. Respondent testified that it was the hole that caused her to fall, and that she remembered stepping

down just before she fell. After she fell her feet were about 6 inches from the hole, and she and her son excluded other factors that might have caused her to fall. ██ While it is of course the law that the plaintiff must prove causation, and that a finding of causation cannot be predicated on mere speculation or conjecture (*McKellar* v. *Pendergast,* 68 Cal. App.2d 485 [156 P.2d 950] ; *Puckhaber* v. *Southern Pac. Co.,* 132 Cal. 363 [64 P. 480] ; *Greene* v. *Atchison, T. & S. F. Ry. Co.,* 120 Cal.App.2d 135 [260 P.2d 834]), it is also the law that such finding may be predicated on an inference, if reasonable, and that the question is generally one of fact for the jury. (*Juchert* v. *California Water Service Co.,* 16 Cal.2d 500 [106 P.2d 886] ; *Stanford* v. *Richmond Chase Co.,* \* (Cal.App.) 263 P.2d 108; *Sokolow* v. *City of Hope,* 41 Cal.2d 668 [262 P.2d 841].)

██ It is next contended that there is no evidence that the sidewalk was in a dangerous or defective condition within the meaning of section 53051 of the Government Code, it being claimed that, as a matter of law, the defect, if any, was a minor one that the appellant was under no duty to repair. The section in question reads as follows :

"A local agency is liable for injuries to persons and property resulting from the dangerous or defective condition of public property if the legislative body, board, or person authorized to remedy the condition:

"(a) Had knowledge or notice of the defective or dangerous condition.

"(b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition."

Under this section it has been held that an obvious minor defect is not sufficient to give the governmental agency constructive notice of its existence by reason of its continued existence, and does not place upon the agency the duty to repair it. (*Nicholson* v. *City of Los Angeles,* 5 Cal.2d 361 [54 P.2d 725].) ██ The proper rule was stated in *Whiting* v. *City of National City,* 9 Cal.2d 163, 165 [69 P.2d 990], as follows: "It is a matter of common knowledge that it is impossible to maintain a sidewalk in a perfect condition. Minor defects are bound to exist. A municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to travel.

---

*A hearing was granted by the Supreme Court on January 13, 1954.

Minor defects due to continued use, or action of the elements, or other cause, will not necessarily make the city liable for injuries caused thereby. What constitutes a minor defect is not always a mere question of fact. If the rule were otherwise the city could be held liable upon a showing of a trivial defect." In this case the defect was "plainly visible" and the plaintiff tripped over it in the daytime "without anything to obstruct her vision." The court also emphasized the plaintiff's knowledge of the area and that plaintiff and others had passed over the walk many times without mishap. It is these last two factors that appellant emphasizes in the instant case. But here the accident happened on a very dark night, the details of the sidewalk could not be seen, and respondent testified that there were so many ruts and broken spots that it was impossible to avoid them at night. Moreover, there was no evidence in the instant case of the absence of other accidents or complaints.

In some cases it can be said, as a matter of law, that the defect is a minor one within the meaning of the rule under discussion, but those cases involve trivial defects. Thus, the Whiting case involved a ¾-inch rise between squares of a city pavement, while the Nicholson case involved a break in a square of pavement causing a rise of 1½ inches. (See, also, *Meyer* v. *City of San Rafael,* 22 Cal.App.2d 46 [70 P.2d 533]; *Balmer* v. *City of Beverly Hills,* 22 Cal.App.2d 529 [71 P.2d 854]; *Rodkey* v. *City of Escondido,* 8 Cal.2d 685 [67 P.2d 1053].) Most of the pertinent cases are collected and discussed in the recent case of *Barrett* v. *City of Claremont,* 41 Cal.2d 70 [256 P.2d 977], where a ½-inch ridge in a sidewalk was held, as a matter of law, to be a trivial defect that imposed no duty on the city. The case, while reversing a plaintiff's verdict, contains, on page 74, a helpful listing of cases where the defects have been held not to be minor.

Where the issue is reasonably debatable whether a defect is of the nature to be classified as dangerous or defective and sufficient by its continued existence to give notice and to impose a duty to repair, or whether it is trivial, is a question of fact. (*Allen* v. *City of Los Angeles,* 43 Cal.App. 2d 65 [110 P.2d 75]; *Ackers* v. *City of Los Angeles,* 40 Cal. App.2d 50 [104 P.2d 399]; *Balkwill* v. *City of Stockton,* 50 Cal.App.2d 661 [123 P.2d 596]; *Owen* v. *City of Los Angeles,* 82 Cal.2d 933 [187 P.2d 860]; *Hook* v. *City of Sacramento,* 118 Cal.App. 547 [5 P.2d 643]; *Warren* v. *City of Los Angeles,* 91 Cal.App.2d 678 [205 P.2d 719]; *Sheldon* v.

*City of Los Angeles,* 55 Cal.App.2d 690 [131 P.2d 874];
see, also, *Fackrell* v. *City of San Diego,* 26 Cal.2d 196 [157
P.2d 625, 158 A.L.R. 625].) In most of these cases the
defect was smaller than the one here involved and the acci-
dent happened under circumstances more favorable to the
public agency, yet the question was held to be one of fact.
In *Balkwill* v. *City of Stockton,* 50 Cal.App.2d 661 [123
P.2d 596], the plaintiff fell at noon on a downtown sidewalk
in a hole smaller and not as deep as the one here involved,
but the court, holding that the question was one of fact,
affirmed a judgment for the plaintiff. After discussing many
of the cases here cited the court concluded (p. 667): ''In
spite of the fact that defects in sidewalks may be so slight
or trivial as to create mere questions of law regarding their
dangerous nature, it is, nevertheless, true that when the
evidence is so conflicting that different conclusions may rea-
sonably be drawn regarding the dangerous character of the
defects, or concerning the question of notice thereof on the
part of the officers of the city, the determination of such
questions should be left to the jury and their conclusions
should not then be disturbed on appeal.''

We are convinced under these authorities as to
whether the hole in the instant case created a dangerous or
defective condition imposing on the city a duty to repair if
it had actual or constructive notice of its existence presented
a question of fact, and that the jury's conclusion is amply
supported.

The last contention of appellant is that it had neither
actual nor constructive notice of the defect as required by
section 53051 of the Government Code.

The evidence shows that in January of 1950, 11 months
before the accident, the appellant was notified that the side-
walk was in a bad state of disrepair. Of course it did not
know of this particular hole, because the evidence shows that
such hole was not observed until June or July of 1950. Appel-
lant contends that the January notice could not serve as a
blanket notice sufficient to predicate liability for subsequently
arising conditions where the particular defect was not a
natural and probable consequence of the normal wear or tear
but was caused, apparently, by a horse's hoof.

We do not find it necessary to decide whether the appellant
had actual notice of the defect because we are of the opinion
that under the facts the jury was entitled to find that the
defect was of such a nature and had existed long enough to

give appellant constructive notice. Appellant urges that as soon as the hole appeared it was filled with sand and gravel by a property owner so that it no longer existed. It also contends that the respondent testified that the hole remained filled with sand and gravel until the very morning of the accident, so that it had no reasonable opportunity to repair it. The testimony of respondent in this respect is quite ambiguous. She replied "yes" to the question if on "the morning you went to work it [the hole] was filled up with gravel but the rain washed it out." The appellant interprets the "morning" in this question as the morning of the accident. From the preceding question asked respondent it is equally reasonable to believe that respondent meant the morning six months before the accident when she first observed the hole, and that sometime after it was filled the sand and gravel were washed out. The appellant assumes that the hole did not exist after it was filled with sand and gravel. Of course such an impermanent filling did not correct the defect. Even if the gravel and sand remained in the hole for some time the jury could find that such a filled hole was easily visible and reasonably discoverable upon inspection.

The law is quite clear that at least after notice the public agency is under a duty to make a reasonable inspection and is chargeable with constructive notice of what such an inspection would have disclosed. (*Fackrell* v. *City of San Diego*, 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 625]; *Van Dorn* v. *City & County of San Francisco*, 103 Cal.App.2d 714 [230 P.2d 393].) Clearly, the appellant was put on inquiry by the complaint made in January of 1950. That complaint covered the condition of disrepair in the whole length of the sidewalk. This complaint was directed to the generally deteriorating condition of the entire sidewalk. After receiving the notice the appellant was under a duty to inspect and is chargeable with notice of all defects that a reasonable inspection would have disclosed. (*Bigelow* v. *City of Ontario*, 37 Cal.App.2d 198 [99 P.2d 298].) The respondent's general complaint had a continuing effect as long as the deteriorating condition existed and covered all defects later occurring.

The appeal from the order denying a new trial is dismissed; the appeal from the order denying the judgment notwithstanding the verdict and the appeal from the judgment are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.