361 P.2d 651

**CITY OF PHOENIX, a municipal corporation, Appellant,**

v.

**B. R. WILLIAMS and Hazel M. Williams, husband and wife, Appellees.**

No. 6861.

Supreme Court of Arizona.

May 4, 1961.

John R. Franks, City Atty., Merle L. Hanson, Anis Mitchell, Leven B. Ferrin, Patrick E. Burke, Asst. City Attys., Phoenix, for appellant.

John A. Metheany and Ralph H. Knight, Phoenix, for appellees.

LOCKWOOD, Justice.

The City of Phoenix, defendants in the court below and hereinafter referred to as appellants, appeal from a verdict and judg-

ment in favor of plaintiffs, B. R. and Hazel M. Williams, hereinafter referred to as appellees. Evidence was adduced at trial that at about noon on April 8, 1957, a person whose name was not noted, called the City of Phoenix to complain of a loose manhole cover at Second Street and East Washington. The call was directed to the Police Department, from whence the caller's message was reported to an officer in a patrol car. The officer drove to the intersection, made an investigation, but found no loose manhole cover. At about five o'clock on the same afternoon, appellee and her granddaughter waited at the southwest corner of the intersection of Second Street and East Washington to be picked up by appellee's daughter. Shortly after 5 P.M., appellee's daughter driving south on Second Street, crossed Washington Street and brought her car to rest in the western-most lane of traffic on Second Street about 6–8 feet from the curb. Appellee stepped into the street, placed her granddaughter in the car, and as she stepped back to enter the car herself, fell as her left leg slipped into a service hole, on which the manhole cover was imperfectly seated. Appellee sued the city for the injuries resulting from her fall and recovered a verdict and judgment of $4,000 from which the city appeals.

Appellant makes eight assignments of error. The first two assignments relate to City of Phoenix ordinance G–111, which reads, in part:

"Section 1: The City of Phoenix shall not be liable nor shall any action be maintained against it for damages for injuries to person or property sustained in consequence of any street, highway, parkway, bridge, culvert, sidewalk or crosswalk being defective, out of repair, unsafe, dangerous or obstructive unless written notice of the defective, dangerous, unsafe, obstructive or unrepaired condition specifying the particular place has been given to the Director of Public Works and there has been a failure or neglect to remedy, repair or remove the defect, danger or obstruction complained of within a reasonable time after such notice has been given."

One of the two assignments dealing with ordinance G–111 is directed toward the court's failure to admit it into evidence, and the other complains of the court's refusal to give a requested instruction in which the ordinance was set forth. Appellee had objected to introduction of the ordinance on the grounds that it was immaterial and unconstitutional, and the trial court sustained the objection. The court refused to give the instruction, though no formal objection was made to his action. Since both of the appellant's assignments ultimately depend upon whether or not ordinance G–111 is valid, we shall address ourselves to that question first.

A consideration of the validity of Phoenix ordinance G–111 requires us to determine initially whether the Phoenix City Council had the power to pass the ordinance. In Paddock v. Brisbois, 35 Ariz. 214, 220, 276 P. 325, 327, this Court said:

"A state Constitution * * * is a limitation of power, whereas a charter of a city, like the federal Constitution, is a grant of power. The organs through which the state speaks and acts may exercise all governmental powers not denied them by the Constitution and not surrendered to the federal government. *A city can exercise only such powers as are delegated to it by the Constitution and the laws of the state and its charter.*" (Emphasis supplied.)

These basic principles regarding the power of a municipality have served as guides in numerous decisions since that time. City of Flagstaff v. Associated Dairy Products Co., 75 Ariz. 254, 255 P.2d 191; City of Phoenix v. Arizona Sash, Door & Glass Co., 80 Ariz. 100, 293 P.2d 438, opinion amended 80 Ariz. 239, 295 P.2d 854. It is obvious, in summary, that an ordinance must conform and be subordinate to the city charter, as well as to the state laws and Constitution.

In Schultz v. City of Phoenix, 18 Ariz. 35, 39, 156 P. 75, 76, we said that the powers derived by a municipality from its charter are three-fold: those granted in express words, those fairly implied in the powers expressly granted, and " ' * * * those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable.' " Within the framework of these fundamentals we must decide whether or not Phoenix Ordinance G–111 was adopted pursuant to any of the above powers, or whether it was authorized by any state statute or by our Constitution.

We cannot find, nor does appellant call to our attention any provision in the City of Phoenix charter which expressly, impliedly, or as a matter of necessity authorizes the adoption of the ordinance. Appellant argues, however, that the right to pass the ordinance under consideration falls within the power invested in municipalities by state statutes which give municipalities the right to lay out, establish, regulate the use, open, vacate, widen, extend, grade, pave, plant trees, or otherwise improve streets, alleys, avenues, sidewalks, parks and public grounds. A.R.S. §§ 9–240, subd. B, pars. 2, 3 and 9–276, subd. A, par. 1 (1956). That these statutes do not provide express authority for the ordinance in question is self-evident. Moreover, this Court has said that " ' * * * the only function of an implied power is to aid in carrying into effect a power expressly granted.' " City of Flagstaff v. Associated Dairy Products Co., 75 Ariz. 254, 257, 255 P.2d 191, 193. We think that the power to

pass an ordinance which virtually absolves the city from liability for negligent maintenance of its streets and sidewalks cannot be fairly implied from an express power which authorizes the city to maintain and improve its streets and sidewalks.

Finally, can the exercise of power to enact ordinance G–111 be justified on the grounds that the ordinance is " ' * * ·* essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable.' " Appellant does not point out any such source of power in the city's charter. We must determine, therefore, whether or not the state statutes cited by appellant impliedly authorize ordinance G–111 as "indispensable" to the accomplishment of the declared purposes of the corporation. A review of the cases concerning the question of a municipality's liability for the negligent maintenance of its streets and sidewalks persuades us that the Legislature did not intend to confer upon the cities of Arizona the power to immunize themselves from liability when it empowered them to maintain and improve their streets and sidewalks.

A charter provision, similar in effect to the ordinance now under consideration, was reluctantly sustained by this Court in Morrell v. City of Phoenix, 16 Ariz. 511, 517, 147 P. 732, 735. The charter provision under attack in the Morrell case was received from the territorial legislature in an amendatory act passed in 1885, and expressly exempted the city from liability for negligence. The Court would not nullify the legislatively-declared policy embodied in the charter but stated " * * * we are unable to see why, as a matter of justice, the city of Phoenix should not be held liable for its neglect or the neglect of its officers." Within a year's time our state Constitution had become effective and the City of Phoenix had adopted a new charter pursuant to the Constitution. The new charter did *not* contain a clause expressly exempting the city from liability for negligence. Thus, in 1916, when the city was again sued for damages for personal injuries, this Court held that the exemption which it had sustained in the Morrell case could not be upheld as part of a new general charter provision which purported, inter. alia, to preserve "immunities" previously enjoyed by the city. Schultz v. City of Phoenix, 18 Ariz. 35, 156 P. 75. Since the decision in the Schultz case, we have repeatedly declared that in Arizona, cities are not immune from liability for the negligent maintenance of their streets and sidewalks. City of Phoenix v. Lopez, 77 Ariz. 146, 268 P.2d 323; Taylor v. Roosevelt Irr. Dist., 72 Ariz. 160, 232 P.2d 107, 109; City of Phoenix v. Weedon, 71 Ariz. 259, 226 P.2d 157; Dillow v. City of Yuma, 55 Ariz. 6, 97 P.2d 535. The pronouncements of this Court are especially significant as correct

interpretation of public policy in view of the fact that the state legislature has not acted to immunize the cities from liability for the negligent maintenance of their streets and sidewalks.

■ Since we are unable to find any authority for ordinance G–111 in the city charter, or in our statutes or Constitution, and in view of the well-established public policy which is contrary to the policy expressed in the ordinance, we hold Phoenix City ordinance G–111 invalid. It follows that since the ordinance is invalid, the trial court acted properly in excluding it from evidence and in refusing to give requested instruction Number 18 in which the ordinance was set forth.

■■ Appellant contends in support of assignment of error number three that the maintenance of a manhole cover is a governmental function and " * * * does not of itself constitute a defect  * * *", that the cover was not "structurally defective" but simply "ill-adjusted" and that therefore plaintiff failed to prove that a defect actually existed of such a nature as to impose on the City of Phoenix a duty to repair such defect. Such reasoning is specious since it is reasonable to define a "defect" as being anything in the state or condition of the street which renders it unsafe or inconvenient for ordinary travel. Gregoire v. City of Lowell, 253 Mass. 119, 148 N.E. 376. The jury could have found from the evidence presented that a "defect" actually existed.

■ In its fourth assignment of error, appellant asserts that the court erred in refusing its motions for directed verdict, new trial, and judgment n. o. v., because plaintiff failed to prove that the City of Phoenix had actual or constructive notice of the defect. It is settled law that if a defect in the street is caused by the failure of the municipality to repair in general, it is not liable, unless it has (1) actual notice of the defect, or (2) of such facts and circumstances as would by the exercise of reasonable diligence lead a prudent person to such knowledge, i. e., constructive notice. City of Phoenix v. Clem, 28 Ariz. 315, 237 P. 168; 19 McQuillin, Municipal Corporations, § 54.102, at 369 (3d ed. 1950). Did the city receive actual notice of the defect in the street? There was uncontradicted evidence that actual notice by telephone was given to the Phoenix Police Department, an agency of the City of Phoenix. Appellant made no objections challenging the authority of the Police Department to receive or act upon actual notice of street defects, and we do not here express any opinion as to whether that department was or was not legally authorized to do so. Nor was appellant's motion for a directed verdict an effective substitute for such objections. In City of Phoenix v. Brown, 88 Ariz. 60, 64, 352 P.2d 754, 757, we held

" 'The competency of evidence is not properly triable upon a motion for an instructed verdict. Such motion challenges the sufficiency of the evidence to sustain the verdict and presupposes that all the evidence admitted by the court *over or without* objection is competent, relevant, and material.' "

Thus, insofar as it relates to the question of actual notice, appellant's fourth assignment of error is without merit since there was sufficient competent evidence regarding the receipt of actual notice by the Phoenix Police Department to justify submission of the question to the jury.

In its fifth assignment of error, appellant complains of the trial court's refusal to give the requested instruction regarding the kind of notice which the city must receive to be held liable for injuries resulting from the negligent maintenance of a latent defect. It is only important for the jury to understand the difference between patent and latent defects when the evidence would reasonably support a finding that the city received either actual or constructive notice. Where the city has received actual notice, it is immaterial whether the defect involved is patent or latent, since the city can be held liable in either case. Newman v. San Mateo County, 121 Cal.App.2d 825, 264 P.2d 594. Thus, since the only reasonable interpretation of the evidence in the instant case is that the city received actual notice, the failure of the trial court to distinguish for the jury between patent and latent defects was not reversible error.

Appellant's remaining assignments of error are not well-taken. Assignment six is directed to the trial court's refusal to give a requested instruction which apprised the jury of the law that a municipality is not required to assume that a defect exists, or to check for defects. In a case where there had been no evidence regarding actual notice, this assignment might have been relevant. In the instant case, where there was uncontradicted evidence regarding the receipt of actual notice by the Police Department, an argument which deals with the legal responsibilities of the city to search for defects where there has been no notice is not germane.

Assignments seven and eight cite as error the court's failure to grant defendant's motion for directed verdict and its failure to grant a requested instruction directing a verdict. Both assignments are based upon the alleged failure of plaintiff to prove the city was negligent in any respect. We think the court acted properly in both instances. There was sufficient evidence to submit the case to the jury and in such circumstances the court must do so. City of Phoenix v. Brown, 88 Ariz. 60, 64,

352 P.2d 754, 757; Golfinos v. Southern Pac. Co., 86 Ariz. 315, 345 P.2d 780.

Affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and JENNINGS, JJ., concur.