[No. B003043. Second Dist., Div. Two. Jan. 3, 1985.]

GEORGE MAPLE, Plaintiff and Respondent, v.
CINCINNATI, INC., Defendant and Appellant.

COUNSEL

Morgan, Wenzel & McNicholas and Patrick C. Quinlivan for Defendant and Appellant.

Kramer & Celli, Thomas M. Celli, Leonard Sacks and Sat Karam Kaur Khalsa for Plaintiff and Respondent.

OPINION

**COMPTON, Acting P. J.**—Defendant in a personal injury action appeals from an order granting plaintiff a new trial after a jury had returned a verdict in favor of defendant. We reverse.

Plaintiff George Maple suffered injuries while operating a press-brake machine during the course of his employment. The machine was manufactured by defendant Cincinnati, Inc. On May 16, 1983, after deliberating for

two and one-half hours, the jury returned a nine-to-three verdict in favor of defendant. Judgment was immediately entered on the verdict.

Thereafter one of the jurors contacted plaintiff's lawyer concerning the conduct of certain jurors which, in her opinion, did not comport with the trial judge's instructions. On May 24, 1983, plaintiff filed a notice of motion for a new trial grounded on juror misconduct. On May 25th, plaintiff filed and served a notice of entry of judgment and declaration of mailing. On May 26th, plaintiff served and filed a second notice of intent to move for a new trial. A hearing on the motion was set for July 13, 1983.

Plaintiff, in addition to serving counsel for defendant, sent both of the notices of intent to move for a new trial to the law firm representing the worker's compensation carrier for plaintiff's employer. The second notice was sent to the wrong address and was returned to plaintiff unopened. Believing his service of the motion for new trial to be defective, plaintiff filed and served a third notice of motion for new trial on June 7, 1983, this time sending a correctly addressed copy to the workers' compensation carrier. On June 28th, plaintiff filed and served his memorandum of points and authorities, along with supporting affidavits from two jurors who had voted in plaintiff's favor and who stated that due to misconduct of the jury plaintiff did not receive a fair trial.

Defendant filed papers in opposition to the motion for a new trial. In those papers, and at the hearing on July 20, 1983, defendant objected to plaintiff's affidavits as untimely because they had been filed more than 30 days after the filing of the first and second notices of intent to move for a new trial.

The trial court made no ruling on defendant's objection but instead ordered counsel for both parties to subpoena the jurors to testify about their deliberations.

Subsequently, 11 of the 12 jurors were examined concerning the jury's conduct during the trial and deliberations. Immediately thereafter defendant reiterated its "jurisdictional objections . . . to this entire motion, and the consideration of the affidavits, and anything subsequent."

After questioning and cross-questioning of the jurors the trial court made the following order. "Plaintiff's motion for a new trial is granted. The court concludes that in view of the nine to three decision that plaintiff did not receive a fair consideration of the evidence by the jury.

"Juror Zimmerman testified and the court believes that, Juror Felando said the trial was a waste of time. The court viewed Juror Felando on the

witness stand and because of her attitude toward the giving of testimony on the motion believes that she made such a statement. [¶] Juror Zimmerman testified that Juror Olson discussed her husband's hand injury and that she believed that all plaintiff had to do was work with his hand and the use of the same would return the same as her husband's. Juror Olson admitted she discussed her husband's injury and his rehabilitation. This statement by Juror Olson was heard by Jurors Mativich, Churchill, Lipstein and Keffle. [¶] Juror Whippel said his son's hand was injured and that his attorney said plaintiff would have to sue the manufacturer first and then could sue the employer. The court concludes that this juror thought plaintiff could and should sue his employer, without reference to the instructions on the manufacturer's duties. [¶] Juror Zimmerman said Juror Felando told her that she had made up her mind two days before deliberation commenced. [¶] Juror Whippel said he made up his mind when the employer testified and, at that time he felt that the employer was to blame for the accident, because he would not buy the safety equipment. This was a decision made in the middle of plaintiff's case. He did not consider the court's instructions on the duty of the manufacturer to produce reasonably safe machines. [¶] Juror Thomas said she made up her mind during the trial when watching the drawings that the machine was not defective."

Defendant first contends that plaintiff's affidavits in support of the motion for new trial were not timely filed and that the trial court therefore should not have considered them. We agree.  "The right to move for a new trial is statutory and unless the procedure prescribed by law is followed the right cannot be exercised when the opposing party offers objection. Strict construction is necessary in order that litigants may not lose their rights." (*Sitkei* v. *Frimel* (1948) 85 Cal.App.2d 335, 337 [192 P.2d 820].) The purpose of strict time limits is, of course, to avoid undue delays in finalizing judgments.

Code of Civil Procedure section 659 states that "[t]he party intending to move for a new trial must file with the clerk and serve upon each adverse party a notice of his intention to move for a new trial, . . . either [¶] 1. Before the entry of judgment; or [¶] 2. Within 15 days of the date of mailing notice of entry of judgment by the clerk of the court pursuant to Section 664.5, or service upon him by any party of written notice of entry of judgment, or within 180 days after the entry of judgment, whichever is earliest; . . ." Code of Civil Procedure section 659a limits the time for filing affidavits to *10 days* after service of notice of motion for new trial, although the trial court may extend that time period for an additional 20 days upon a showing of good cause.

In the present case judgment was entered on May 16, 1983, the same day that the jury rendered its verdict. Plaintiff filed his first notice of

motion for new trial on May 24th, which was timely and effective since it occurred within 180 days after entry of judgment. The 10-day statutory period for filing the necessary supporting affidavits began to run on that date. Plaintiff's filing and serving of his own "notice of entry of judgment" and a second notice of motion for new trial were clearly idle acts of no legal significance.

The worker's compensation carrier, although it filed a lien claim upon any judgment for damages that plaintiff might recover, never intervened in the action. It was not a party to the lawsuit, and did not participate in the trial. ■ A nonintervening claimant is not a party to the main action, and is not entitled to service of notice of motion for new trial. (*Apostolos* v. *Estrada* (1958) 163 Cal.App.2d 8, 12 [328 P.2d 805]; 5 Witkin, Cal. Procedure (2d ed. 1971) Enforcement of Judgment, § 141, p. 3504; and Attack on Judgment in Trial Court, § 50, pp. 3625-3626.) Here any defect in the service of the worker's compensation carrier was of no consequence.

■ Inasmuch as plaintiff's first notice of motion was timely filed and served on the adverse party on May 24, 1983, plaintiff had only 10 days from that date within which to file his supporting affidavits, i.e., until June 3, 1983. (Code Civ. Proc., § 659a.) Plaintiff made no request for a 20-day extension of time as provided in section 659a, nor any showing that good cause existed for such an extension. There is nothing in the record to indicate that the court granted such an extension. Plaintiff's affidavits, filed on June 28, 1983, were thus 25 days late.

■ Defendant next argues that the judge also erred in calling for and considering oral testimony of the jurors who had decided the case. Again we agree.

Code of Civil Procedure section 658 specifically provides that an application for a new trial must be on the basis of affidavits. Beyond that, however, we can conceive of nothing more threatening to the system of trial by jury and the sanctity of jury deliberations than to require jurors to appear in court, after rendering a verdict, to be "grilled" concerning the details of their deliberations.

■ We now turn to what we consider to be the most significant error which occurred, that is, the trial judge's statement of grounds and reasons for his ordering a new trial.[1]

---

[1]Code of Civil Procedure section 657 provides in part: ". . . When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated."

Our interpretation of the court's order is that the first paragraph which states "in view of the nine to three decision . . . plaintiff did not receive a fair consideration of the evidence," purports to state the grounds for a new trial. That statement does not set forth any of the grounds enumerated in Code of Civil Procedure section 657.[2] Further we interpret the recitation of the various statements which the judge attributed to the jurors as an attempt to state the court's reasons for granting the new trial. As we will point out, those reasons are totally inadequate to support any order for a new trial.

In spite of the perception that, in recent times, the law concerning the ability of jurors to impeach a verdict has been liberalized, the process must be carefully scrutinized and controlled.

The liberalization which some courts and counsel have perceived apparently stems from Evidence Code section 1150 which provides: "(a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly."

That statute, however, goes on to say, "No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." Further, subdivision (b) clearly states that *"Nothing in this code affects the law relating to the competence of a juror to give evidence to impeach or support a verdict."* (Italics added.)

█  As this court observed in *Johns v. City of Los Angeles* (1978) 78 Cal.App.3d 983, 989-990 [144 Cal.Rptr. 629] "Evidence Code section 1150 does not alter the traditional rule that jurors may not impeach their verdict except in the case of a verdict arrived at by lot or chance (Code Civ. Proc., § 657, subd. 2) or where a juror has a bias which was concealed on voir dire. . . . [¶] [That section] does not envision a procedure whereby a

---

[2]Code of Civil Procedure section 657 provides in pertinent part: "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: [¶] 1. Irregularity in the proceedings of the court, jury or adverse party, . . . [¶] 2. Misconduct of the jury; . . . [¶] 3. Accident or surprise, which ordinary prudence could not have guarded against. [¶] 4. Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial. [¶] 5. Excessive or inadequate damages. [¶] 6. Insufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law. [¶] 7. Error in law, occurring at the trial and excepted to by the party making the application."

trial judge, as a result of a claim of jury misconduct, reviews a 'replay' of the particular language used by various jurors as they deliberated and makes a subjective determination of its propriety. Such a procedure would be too great an extension of the court's limited authority to invade the traditionally inviolate nature of the jury proceedings."

■ If there is one thing which is clear from the language of Evidence Code section 1150 and the case law dealing with the subject, it is that the mental processes of the jurors are beyond the hindsight probing of the trial court.

One of the primary reasons for limiting a juror's ability to impeach the verdict to the areas of chance verdicts and disqualification is to prevent minority jurors in less than unanimous verdicts from attacking the majority's decision by claiming "misconduct."

The trial court's order here is a classic example of the need for and the wisdom of the limitations on the use of statements of jurors to impeach a verdict. None of the statements attributed to the jurors revealed anything about their qualifications to serve and of course contained no evidence of a verdict arrived at by lot or chance. The trial judge simply made a subjective determination that the jurors didn't think or analyze the case "correctly," a determination triggered by statements of a juror who had voted in the minority.

■ If a trial judge believes that the evidence is objectively insufficient as a matter of law to support a verdict, he or she of course has the power under Code of Civil Procedure section 657 to order a new trial on that basis. The trial judge does not, however, have the power to pass judgment on the correctness of the jurors' thought processes involved in weighing the evidence.

The jury system in this country is based on the belief that nonprofessional jurors will bring to the factfinding process a combination of community attitude and practical wisdom born of real life experience which is to be preferred to the more legalistic approach of the professional jurist.

Since jurors are nonprofessional, the statements they make during deliberations and the arguments they may advance in attempting to persuade their fellow jurors to a particular point of view might not always get high marks from legal or forensic experts. On the other hand, attempts by judges to straight jacket a jury in its deliberations by an after-the-fact critiquing and criticizing of the language and reasoning used in those deliberations runs directly contrary to our fundamental concept of the jury function.

For all the reasons set forth above the order granting a new trial was an abuse of discretion. That order is reversed and the matter is remanded to the trial court with directions to enter an order denying plaintiff's motion for a new trial.

Beach, J., and Gates, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 13, 1985. Bird, C. J., was of the opinion that the petition should be granted.