Opinion
 

 WOODS (Fred), J.
 

 In this personal injury automobile collision lawsuit, plaintiffs-appellants were awarded a $10,000 verdict. Claiming the award was inadequate they moved for a new trial. The motion was denied. Appellants contend the trial court erred in denying their new trial motion because the jury rendered a quotient verdict, defense counsel committed misconduct during jury voir dire, and defense counsel improperly cross-examined appellant. We find no error and affirm the judgment.
 

 Factual Background
 

 There being no insufficiency of evidence claim the facts may be stated simply. Our perspective favors the judgment.
 
 (People
 
 v.
 
 Barnes
 
 (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)
 

 On July 31, 1989, Joseph M. Fredrics (appellant)
 
 [1]
 
 was in the driver’s seat of his stationary Mercedes in the parking lot of the building where his law offices were located when his rear bumper was struck by the front bumper of a much lighter car, an Oldsmobile Calais driven by Michael Paige (respondent).
 

 
 *1646
 
 Appellant sued respondent and claimed he had incurred over $22,000 in medical expenses as a result of the accident. Respondent admitted responsibility for the accident but contested appellant’s injuries and medical expenses. The jury returned a verdict for appellant in the amount of $10,000. Appellant moved for a new trial. The motion was denied. This appeal followed.
 

 Discussion
 

 1.
 
 Appellant contends the jury rendered a quotient verdict.
 

 Code of Civil Procedure section 657
 
 [2]
 
 prohibits “chance” verdicts and a more sophisticated variant,
 
 quotient
 
 verdicts. (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 361, p. 362.) A quotient verdict is when “jurors agree to be bound by an
 
 average
 
 of their views; each writes the amount he favors on a slip of paper; the sums are added and divided by 12, and the resulting ‘quotient,’ pursuant to the prior agreement, is accepted as the verdict without further deliberation or consideration of its fairness.”
 
 (Ibid.)
 

 Appellant contends the jury rendered a quotient verdict. As he did in the trial court, appellant relies upon the declarations of five jurors. The declarations are almost identical and that of Juror Elizabeth Mendoza is representative. It states: “We decided that [we] should each put an amount of money that we felt should be awarded on a piece of paper. It was then added up and divided by the number of jurors. This is the method in which the verdict was obtained in the sum of $10,000.”
 

 Respondent opposed the new trial motion and filed seven counter-juror declarations including three from jurors who had given declarations to appellant. The counterdeclaration from Juror Elizabeth Mendoza is representative. It states: “The declaration I signed, which I understand the plaintiff is now trying to use to get a new trial was brought to my door at my home on December 14, 1991 by an investigator. I had company. [] [f] This investigator told me that he was from the court and that the court does this kind of thing every time in conducting a survey of the jurors after a trial. [] HO I
 
 *1647
 
 thought what I was signing was part of a survey for the court and did not read the declaration carefully. The investigator told me that he got my address from the court.”
 

 As to their verdict, Ms. Mendoza declared: “I recall that we had some discussion before lunch about the evidence and then someone suggested that we put down a figure of money on a slip of paper that we thought would be fair to give to the plaintiff. [] HQ I put down nothing on my slip of paper. I did not believe that the evidence showed that the plaintiff deserved anything. D [1] After lunch, we came back and the foreman averaged the twelve slips of paper with amounts written down from each juror and the figure came out to $9,800.00 and some odd dollars. [] [1] The foreman asked if it was okay to round the figure up to $10,000.00. We all agreed that it was. [] HQ We then talked about $10,000.00 as the verdict. Some people felt that this was still too much. We took another vote on the $10,000.00. I think we took another vote on slips of paper and by raising our hands. [] HQ There was no agreement among the jurors to simply write down a figure which we thought was fair, average the amounts together, and let that amount be our verdict.”
 

 Just as with live testimony, it was for the trial court to consider the declarations and counterdeclarations, assess credibility, and determine the facts. “ ‘When an issue is tried on affidavits . . . and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed.’ ”
 
 (Weathers
 
 v.
 
 Kaiser Foundation Hospitals
 
 (1971) 5 Cal.3d 98, 108 [95 Cal.Rptr. 516, 485 P.2d 1132].) Further, “ ‘an appellate court will not interfere with [a trial court’s ruling on a motion for new trial] unless a manifest and unmistakable abuse of discretion clearly appears.’ ”
 
 (Id.
 
 at p. 109;
 
 Schelbauer
 
 v.
 
 Butler Manufacturing Co.
 
 (1984) 35 Cal.3d 442, 452 [198 Cal.Rptr. 155, 673 P.2d 743, 38 A.L.R.4th 566].)
 

 The trial court, which believed the counterdeclarations, was entitled to find there had been no quotient verdict. Rather than a prior agreement to be bound by a quotient, the jurors used the quotient for further “independent free consultation and consideration.” (7 Witkin, Cal. Procedure,
 
 supra,
 
 Trial, § 362, p. 363.) Thereafter, they modified the quotient figure and took another vote to arrive at their verdict. The trial court correctly found their verdict proper.
 
 (Bardessono
 
 v.
 
 Michels
 
 (1970) 3 Cal.3d 780, 794 [91 Cal.Rptr. 760, 478 P.2d 480, 45 A.L.R.3d 717];
 
 Diamond Springs Lime Co.
 
 v.
 
 American River Constructors
 
 (1971) 16 Cal.App.3d 581, 605 [94 Cal.Rptr. 200];
 
 Balkwill
 
 v.
 
 City of Stockton
 
 (1942) 50 Cal.App.2d 661, 671 [123 P.2d 596].)
 

 
 *1648
 
 Our decision in
 
 Chronakis
 
 v.
 
 Windsor
 
 (1993) 14 Cal.App.4th 1058 [18 Cal.Rptr.2d 106], relied upon by appellant, does not support appellant’s position. In
 
 Chronakis
 
 plaintiffs juror affidavits were unopposed and demonstrated “. . . the jurors agreed in advance to be bound by the average of their respective views of a proper award of damages.”
 
 (Id.
 
 at p. 1065.) We recognized in
 
 Chronakis,
 
 as we find in the instant matter, “ . . there is no impropriety in the jurors making an average of their individual estimates as to the amount of damages for the purpose of arriving at a basis for discussion and consideration, nor in adopting such average if it is subsequently agreed to by the jurors; but to agree beforehand to adopt such average and abide by the agreement, without further discussion or deliberation, is fatal to the verdict.’ ”
 
 (Id.
 
 at p. 1066.)
 

 Appellant further argues the trial court should not have considered respondent’s counterdeclarations because they were filed beyond the statutory 10-day period. (Code Civ. Proc., § 659a
 
 [3]
 
 .) We disagree. The 10-day period is not jurisdictional
 
 (Wiley
 
 v.
 
 Southern Pacific Transportation Co.
 
 (1990) 220 Cal.App.3d 177, 188 [269 Cal.Rptr. 240]) and may be extended for good cause.
 
 [4]
 
 We find no abuse of discretion by the trial court in considering respondent’s counterdeclarations.
 

 Finally, appellant asserts the trial court should have disregarded the counterdeclarations because respondent obtained them “through coercion.” The alleged coercion consists of one sentence contained in the letter respondent sent jurors seeking their declarations. In the letter, respondent described the quotient procedure and then stated, “Such a verdict, called a quotient verdict, is unlawful.”
 

 Appellant cites no authority for the proposition that such a sentence makes subsequent declarations coerced. The effect, if any, of respondent’s letter was a factual matter for determination by the trial court. We find no abuse of discretion in the trial court’s determination.
 

 Appellant’s contention is without merit.
 

 
 *1649
 
 2.
 
 Appellant contends defense counsel committed misconduct during jury voir dire.
 

 During jury voir dire defense counsel asked a prospective juror if he had “heard the story about the local research laboratories that are starting to use lawyers instead of rats as laboratory animals?”
 

 The prospective juror said he hadn’t “but it would be a pleasure.”
 

 Defense counsel then said, “Four reasons: [][] The first is that lawyers are more plentiful. [1] The second is that they’re highly trainable, [f] The third is that the research assistants don’t become involved with the lawyers, [ft) The fourth is that there’s some things even a rat won’t do.”
 

 Appellant did not object, did not request a jury admonition, and did not request a mistrial. Instead appellant proceeded with jury selection, production of evidence, and the rendition of a verdict. Only after receiving a verdict appellant considered inadequate did he belatedly complain about defense counsel’s lawyer story. Appellant’s complaint comes too late. (Evid. Code, § 353;
 
 Whitfield
 
 v.
 
 Roth
 
 (1974) 10 Cal.3d 874, 892 [112 Cal.Rptr. 540, 519 P.2d 588];
 
 Horn
 
 v.
 
 Atchison T. & S. F. Ry. Co.
 
 (1964) 61 Cal.2d 602, 609-610 [39 Cal.Rptr. 721, 394 P.2d 561].) “[A] claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished.”
 
 (Id.
 
 at p. 610.)
 

 3.
 
 Appellant contends defense counsel improperly cross-examined appellant.
 

 During cross-examination, appellant was asked if his law practice was bigger in 1989 than now (December 1991). In response he stated “We’ve been—we’ve been insolvent since ’88.”
 

 At a bench conference the trial court stated: “Well, I had previously ruled that I would not allow counsel to get into . . . how much money the firm is making, and so on, but. . . the fact of insolvency was volunteered by the witness, and, quite frankly, it goes to ... his credibility.”
 

 Defense counsel was then permitted to ask appellant if in 1987 the gross income of his law corporation was 1.1 million dollars. When appellant said “no” defense counsel impeached, him with appellant’s June 8, 1989, deposition.
 

 Appellant contends these questions concerning his law practice income were improper. We disagree.
 

 
 *1650
 
 “ ‘Any fact may be called out in cross-examination which a jury might deem inconsistent with the direct testimony of a witness, and a defendant testifying in his own behalf is in this respect put upon the same plane with other witnesses.’”
 
 (People
 
 v.
 
 Linyard
 
 (1957) 151 Cal.App.2d 50, 56 [311 P.2d 57].)
 

 Respondent requests we assess damages against appellant for bringing a frivolous appeal (Code Civ. Proc., § 907: “When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just.”).
 

 Our test is the following: “[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.”
 
 (In re Marriage of Flaherty
 
 (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].)
 

 The record leaves a modicum of doubt whether this appeal “indisputably has no merit.” We cannot say that “ any reasonable attorney would agree that the appeal is totally and completely without merit.”
 
 (In re Marriage of Flaherty, supra,
 
 31 Cal.3d at p. 650.) We therefore decline to grant sanctions in this instance.
 

 Disposition
 

 The judgment is affirmed.
 

 Costs on appeal are awarded to respondent.
 

 Lillie, P. J., and Johnson, J., concurred.
 

 [1]
 

 Sheila Fredrics, appellant’s wife, was a passenger in the car and a coplaintiff. Since it was Mr. Fredrics who claimed to have been seriously injured, we refer to him as appellant.
 

 [2]
 

 In pertinent part the section reads:
 

 “The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party:
 

 “2. Misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors.”
 

 [3]
 

 The section reads: “Within 10 days of filing the notice, the moving party shall serve upon all other parties and file any affidavits intended to be used upon such motion. Such other parties shall have ten days after such service within which to serve upon the moving party and file counter-affidavits. The time herein specified may, for good cause shown by affidavit or by written stipulation of the parties, be extended by any judge for an additional period of not exceeding 20 days.”.)
 

 [4]
 

 Maple
 
 v.
 
 Cincinnati, Inc.
 
 (1985) 163 Cal.App.3d 387 [209 Cal.Rptr. 451], relied upon by appellant, is distinguishable: the plaintiff filed his affidavits 25 days late; the trial court improperly had the jurors personally attend and be “grilled” by counsel; and the trial court gave improper reasons for granting the new trial motion.