Filed 6/6/13  Christie v. Kimball CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| DANITA CHRISTIE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>GLENN KIMBALL et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B241394<br>(Super. Ct. No. 56-2008-00320286-<br>CU-OR-OXN)<br>(Ventura County) |

Danita Christie appeals a judgment in favor of defendants Glenn Kimball and Paulette Kimball (now deceased) in Christie's action to set aside a transfer of real property from a family trust by a deed executed by Mary Schwarz, the decedent and mother of Paulette Kimball and Christie.  We conclude, among other things, that 1) substantial evidence supports the trial court's findings that Schwarz had the requisite capacity to make the deed and was not subject to undue influence by the Kimballs, and 2) the trial court made adequate findings.  We affirm.

FACTS

Mary Schwarz was the mother of Paulette Kimball and Christie.  In 1991, Schwartz and her husband, as "settlors," created a living family trust naming Christie and Paulette Kimball "as successor trustees" upon "the death or incapacity of the surviving spouse [Schwarz]."  The settlors deeded the real estate at 1461 Frazier Street, Camarillo, California, to the trust.  Schwarz lived with Christie in California.

In 2005, Schwarz amended the trust and made Christie "the sole successor trustee." She also appointed Christie as her agent in a power of attorney which made her responsible for Schwarz's property. Christie managed Schwarz's "finances."

In March of 2007, Schwarz moved to Montana where she resided with Paulette and Glenn Kimball. Christie continued to manage Schwarz's finances after the move.

In June of 2007, Schwarz executed a "power of attorney" that revoked "all past powers of attorney" and named Paulette Kimball "as the fiduciary with . . . Christie as the successor."

A dispute arose between the Kimballs and Christie regarding Schwarz's property in October of 2007. Kirk Crews, Schwarz's doctor, determined this "dispute" was "causing [Schwarz] great stress." He gave her a "Mini-Mental Status Exam" (MMSE). Schwarz missed some short-term memory questions, but scored 26 out of 30, which Crews determined to be "low normal." Crews recommended that Schwarz seek legal counsel. In his October 31, 2007, medical report, Crews concluded that Schwarz "is completely competent to make her own decisions."

Schwarz told Glenn Kimball that she "did lament the fact that [Christie] had her money and [Schwarz] wanted it." In October of 2007, Schwarz had more than $130,000 in her bank account at Fremont Investment and Loan in California. At Schwarz's request, the Kimballs asked Christie to send the funds from that account to Montana to be used for Schwarz.

Christie refused. She then withdrew all the funds from that account. She did not advise Schwarz or the Kimballs about the withdrawal. Nor did she disclose the location of the money she removed. The power of attorney Christie used to withdraw the funds had been revoked by Schwarz before Christie closed that bank account. After discovering the withdrawal, Paulette Kimball believed Christie had "misappropriated" Schwarz's money. The Council on Aging referred Schwarz to Montana attorney Jennifer Lint.

2.

Lint met with Schwarz privately, outside the presence of the Kimballs on December 12, 2007. Schwarz told Lint that she had previously provided Christie with substantial sums of money. She consequently wanted to make a will that would leave all her property to Paulette Kimball. Lint drafted a will consistent with Schwarz's wishes. Lint determined that Schwarz had the capacity to make a will. She saw no evidence that Schwarz was subject to any undue influence by the Kimballs. Lint advised Schwarz to remove the Frazier Street property from the trust. She told Schwarz to execute a new deed so the property would be in her name and not a trust asset. Lint did not prepare the deed.

On December 14, 2007, Schwarz signed a grant deed which transferred the Frazier Street property from the trust to herself. The deed was not recorded because of a technical defect. The Ventura County Recorder noted that Schwarz did not include the name of the trust near the signature line. On January 8, 2008, that defect was corrected and the deed was recorded.

On August 15, 2008, a Montana court appointed a temporary conservator for Schwarz. Schwarz died in December of 2008.

Paulette Kimball filed a "petition for probate" of Schwarz's will in the Ventura County Superior Court, listing the Frazier Street property as an estate asset.

Christie filed an action in the trial court to set aside the deeds. She claimed Schwarz lacked the mental capacity to execute them and the land transfer was the result of undue influence by the Kimballs. The witnesses at trial included, among others, Christie, Lint and Glenn Kimball. Paulette Kimball did not testify. She died before judgment was entered. Her deposition and Crews' deposition were received as exhibits.

The trial court found the deeds were valid, Schwarz had the capacity to make them, and she was not subject to any undue influence. It issued a written statement of decision containing numerous factual findings.[1]

---

[1] We have granted the Kimballs' motion to augment the record.

DISCUSSION

*Substantial Evidence*

Christie contends the trial court erred by finding Schwarz was competent and not subject to undue influence when she signed the deeds. She cites to evidence she introduced. But the issue is not whether some evidence supports her position, it is whether substantial evidence supports the judgment.

We review the record in the light most favorable to the judgment. "[W]e must resolve all evidentiary conflicts in favor of the prevailing party . . . ." (*Burch v. Premier Homes, LLC* (2011) 199 Cal.App.4th 730, 744.) "We may not insert ourselves as the trier of fact and reweigh the evidence." (*Id.* at p. 745.) The trial court decides the credibility of the witnesses. (*Fredrics v. Paige* (1994) 29 Cal.App.4th 1642, 1647.)

*Capacity to Sign the Deeds*

Christie claims Schwarz lacked the capacity to sign the deeds executed on December 14, 2007, and January 8, 2008. There is a presumption that "all persons have the capacity to make decisions and to be responsible for their acts . . . ." (Prob. Code, § 810, subd. (a).) "A person who has a mental or physical disorder may still be capable of contracting, conveying . . . and performing other actions." (*Id.*, subd. (b).)

"'It is well established that "old age or forgetfulness, eccentricities or mental feebleness or confusion at various times of a party making a will are not enough in themselves to warrant a holding that the testator lacked testamentary capacity."'" (*Andersen v. Hunt* (2011) 196 Cal.App.4th 722, 727.) "'The rules governing capacity to execute a deed are in general the same as those governing testamentary capacity.'" (*Blevin v. Mayfield* (1961) 189 Cal.App.2d 649, 652.) "'"[W]hen one has a mental disorder in which there are lucid periods, it is presumed that his will has been made during a time of lucidity." [Citation.] . . . Thus a finding of lack of testamentary capacity can be supported only if the presumption of execution during a lucid period is overcome.'" (*Andersen*, at p. 727.)

Lint testified that in November and December of 2007, Schwarz was "very well oriented," she "never appeared confused," and she did not need a conservatorship "at

4.

that time"; and that on December 12, 2007, Schwarz understood "the purpose of her will." Schwarz knew her estate and her beneficiaries. There was no indication that she had any "short-term memory loss." Lint said Schwarz had the "capacity to make a will."

In his October 31, 2007, medical report, Crews concluded Schwarz "is completely competent to make her own decisions." In his January 17, 2008, report, he said Schwarz "seems to have a fairly clear impression of what is going on."

In a February 27, 2008, medical report, Crews said Paulette Kimball raised "competency issues" about Schwarz. On August 15, 2008, a Montana court appointed a temporary conservator for Schwarz. But capacity is determined at the time the transaction took place. (*Andersen v. Hunt*, *supra*, 196 Cal.App.4th at p. 727.) Evidence of a subsequent deterioration does not void the transaction if the person had the requisite capacity at the time of execution. (*Estate of Lingenfelter* (1952) 38 Cal.2d 571, 580.)

At trial, Christie referred the trial court to Crews' July 31, 2007, medical report and his deposition where Crews said Schwarz suffered deficits in two mental functions--short-term memory and orientation. She claims the court should have voided the deeds based on this evidence.

But the trial court correctly noted that evidence of mental deficits "may be considered *only* if it significantly impairs the person's ability to appreciate the consequences of his or her actions *with regard to the type or act or decision in question.*" (*Andersen v. Hunt*, *supra*, 196 Cal.App.4th at p. 730; Prob. Code, § 811, subd. (b).) "The fact that a person suffers from a measure of mental incapacity does not, by itself, extinguish the person's ability to participate in contractual relationships and transactions." (*Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 743.) "[S]enile dementia does not render one incapable of executing contracts or transacting business." (*Holman v. Stockton Sav. & Loan Bk.* (1942) 49 Cal.App.2d 500, 508.)

In her reply brief, Christie concedes "[t]here is no doubt [Schwarz] had capacity to make a will . . . ." She claims the issue here is her capacity to make the deeds. But "'[t]he rules governing capacity to execute a deed are in general the same as those governing testamentary capacity.'" (*Blevin v. Mayfield*, *supra*, 189 Cal.App.2d at p. 652.)

5.

Schwarz signed the first deed on December 14, 2007, only two days after she signed the will. Christie claims there was no evidence that Schwarz "had the legal capacity to remove trust property . . . ." But in his deposition, Crews said that as of October 31, 2007: 1) Schwarz "had the requisite mental capacities *to understand what the consequences of deeding property from her trust to herself would be*," and 2) she also had the capacity to "dispose of her property." (Italics added.) In his December 18, 2007, report, four days after she signed the first deed, Crews concluded her mental condition had not changed since October 31st. Lint saw no evidence of incapacity, no short-term memory loss, no orientation deficits, and she testified Schwarz "knew she had a trust" and wanted to sell the property.

Christie claims Crews' January 23rd report, where he noted Schwarz had an MMSE score of 19 out of 30 and recommended "Adult Protective Services," showed that Schwarz lacked capacity to sign the deed on January 8th. But Crews testified, "I didn't see her on the 8th, so I just can't speak to that yea or nay." The trier of fact resolves conflicts in the evidence and decides which portions of a witness's testimony will be credited or rejected. (*People v. Allen* (1985) 165 Cal.App.3d 616, 623.) "[I]t may disregard the expert's opinion, even if uncontradicted, and draw its own inferences from the facts." (*Kennemur v. State of California* (1982) 133 Cal.App.3d 907, 923.) Lint's and Glenn Kimball's testimony and Crews' October 31st, December 18th and January 17th reports support the finding.

*Undue Influence*

Christie contends the deeds are invalid because Schwarz signed them as a result of the Kimballs' undue influence. But the finding of no undue influence is supported by the record. "[U]ndue influence includes 'taking an unfair advantage of another's weakness of mind, or . . . taking a grossly oppressive and unfair advantage of another's necessities or distress.'" (*Odorizzi v. Bloomfield School Dist.* (1966) 246 Cal.App.2d 123, 130.) It may involve "persuasion which tends to be coercive in nature, persuasion which overcomes the will . . . ." (*Ibid.*)

6.

In discussing her estate with Schwarz, Lint saw no evidence that Schwarz was subject to "undue influence," fraud or misrepresentations by Paulette Kimball or anyone else. Schwarz voluntarily executed her will with a rational goal. She wanted Paulette Kimball to receive this real property after her death. The will, which left the property to Paulette Kimball, was based on Schwarz's "wishes." Lint said she "wanted to provide anything that she had left in her estate when she passed to Paulette." She did not want Christie to receive anything, because she had previously given Christie sufficient monetary assets.

In weighing the evidence, the trial court may consider whether the grantor received independent legal advice. (*Nagle v. Valadez* (1962) 202 Cal.App.2d 51, 55.) Lint testified the advice that Schwarz should deed the property out of the trust came from her (Lint), not from anybody else. After reviewing her estate plan, Lint decided Schwarz should take control of the real estate and sell it to meet her needs. She noted that Schwarz could become eligible for Medicaid in Montana if she sold that real estate. Lint believed that as the "grantor trustee," Schwarz had the authority to move the property out of the trust and deed it to herself.

The trial court also could reasonably infer that Glenn Kimball's testimony showed Schwarz had a strong motive to change her estate plans. He said Schwarz complained that Christie did not comply with her duty to pay for her expenses. He said Schwarz "did lament the fact that [Christie] had her money and [Schwartz] wanted it." The suggestion to change the estate plan came from Schwarz's attorney, not the Kimballs. Lint advised Schwarz to "get a new deed, and to preserve [her] assets, take the house out of the trust." She assisted Schwarz in the preparation of the deeds, but she did not "force" her to sign them.

Citing to her own testimony, Christie claims during her phone calls to Schwarz, the Kimballs were: 1) "telling [Schwarz] what to say," 2) urging Schwarz to request Christie to send money, and 3) trying to terminate the conversations. She said Schwarz cried and said she wanted to come to California. But "a trial judge is not required to accept as true the sworn testimony of a witness, even in the absence of evidence directly

7.

contradicting it." (*Lohman v. Lohman* (1946) 29 Cal.2d 144, 149.) Moreover, Glenn Kimball testified he did not interrupt or monitor those phone calls.

Christie claims there was uncontradicted evidence that: 1) the Kimballs prevented Schwarz from leaving Montana, 2) the Kimballs threatened to place Schwarz in a nursing home, and 3) Glenn Kimball told Schwarz to see a lawyer for his own benefit. Christie cites Paulette Kimball's deposition where Paulette admitted telling Christie she would be arrested if she moved Schwarz and said she "did not want [Christie] taking [Schwarz] to California." But Lint and Glenn testified Schwarz did not want to return to California, and the Kimballs denied making the nursing home threat to Schwarz. Glenn testified he only told Schwarz to see a lawyer because Crews recommended Schwarz do so. When he and Paulette took Schwarz to see Lint, they "said a couple of words and left because [Lint] wanted to talk to [Schwarz] alone." They "were trying to be very impartial, leave [Schwarz] alone with [Lint]." Christie suggested that Lint relied on the Kimballs' information that conflicted with what Schwarz wanted. But Lint testified the information she obtained from Schwarz and the Kimballs was consistent and there was no conflict.

Christie claims Crews concluded in "January 2008" that Schwarz "would be susceptible to undo influence." But Crews made that observation on *January 23rd*, more than a month after Schwarz executed the will and the first deed, and two weeks after she executed the second deed. The trial court found Schwarz was not subject to undue influence when she signed the deeds. (*Estate of Lingenfelter*, *supra*, 38 Cal.2d at p. 580.) Moreover, Schwarz was the beneficiary. The deed transferred property to her, not to the Kimballs.

### *Adequate Findings*

Christie contends the trial court did not make adequate findings. We disagree. "When findings are questioned, it is the duty of an appellate court to compare them with all the evidence in the case, to consider them as a whole, and to construe them liberally in support of the judgment." (*In re Cheryl E.* (1984) 161 Cal.App.3d 587, 600.)

Christie claims that: 1) the trial court did not make findings on all the issues; 2) she filed objections to the proposed statement of decision which the court ignored; and

8.

3) consequently, we must reverse because the implied findings doctrine may not be applied to support the judgment on the missing findings.

But the rule prohibiting appellate courts from considering implied findings to support a judgment applies only where the trial court did not decide "the principal controverted issues at trial." (Code Civ. Proc., §§ 632, 634.) "[I]t is for the trial court to determine what are the 'principal controverted issues'--those on which the outcome of the case turns." (*Vukovich v. Radulovich* (1991) 235 Cal.App.3d 281, 295.) Where it decides those issues, omitted findings on other issues will not constitute reversible error. (*Ibid.*) Here the trial court said it was bifurcating the case to decide two principal issues: 1) the "competence of . . . Schwarz to have signed the grant deeds," and 2) "undue influence."

*Findings on Capacity and Undue Influence*

The trial court resolved those issues by making sufficient findings on competency and undue influence. It said Schwarz "had the mental capacity to sign the deed in question . . . ." It said, "No evidence was presented that the court views as evidence of undue influence." It found that Schwarz's "actions were reasonable" and she received independent legal advice before signing the deeds; that Lint met with Schwarz "outside the presence of the [Kimballs] in order to assure herself that she was working from [Schwarz's] own wishes, not those of someone else"; and that transferring the real estate out of the trust was a voluntary act and Schwarz executed the deeds for a rational reason. It said, "[S]he wanted to have control over her own assets."

Christie claims the trial court did not make findings on Crews' determination that Schwarz had two mental "deficits." But during trial, the court found "the facts as [Crews] described them would certainly not rise to the level of a finding that Miss Schwarz was incapacitated at the time that he noted those two deficits."

*The Findings on Code Sections, Constructive Fraud, Duress, and Mistake*

Christie objected to the statement of decision and requested findings "on the Court's application of the following statutes - Probate Code sections 810-812, 4305(a), Civil Code sections 38, 39, 1566, 1567, 1572, 1573, 1575, 1577 . . . ." But the trial court was only required to make findings on "ultimate facts." (*Moreno v. Jessup Buena Vista*

9.

*Dairy* (1975) 50 Cal.App.3d 438, 447.) It did not have to "'make a specific determination on every conflict of evidence, much less, to diagram all the intermediate decisions on points of law . . . .'" (*Ibid.*; *In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 736, fn. 15 ["the trial court is not required to respond point by point to issues posed in a request for a statement of decision"].) Christie claims the trial court made findings using the lower standard of legal capacity. But the court knew the various standards of capacity and found that, "even" under "the higher standard," Schwarz had "the legal capacity." Its positive findings on capacity were a rejection of Christie's claims that Schwarz was of unsound mind under Civil Code section 39 and other provisions.

Christie argues the trial court made no express findings on the issues of constructive fraud, duress, and mistake. But even "the failure to make findings on material issues is not reversible error when the missing findings may be reasonably inferred from other findings or when the missing findings would necessarily have been adverse to the appellants." (*Harvard Investment Co. v. Gap Stores, Inc.* (1984) 156 Cal.App.3d 704, 710, fn. 5.) Constructive fraud is a breach of a duty where one "gains an advantage to the person in fault . . . by misleading another to his prejudice . . . ." (Civ. Code, § 1573, subd. 1.) "Duress consists in unlawful confinement of another's person, or relatives, or property, which causes him to consent to a transaction through fear." (*Odorizzi v. Bloomfield School Dist.*, *supra*, 246 Cal.App.2d at p. 128.) It may include unlawful threats. (*In re Marriage of Gonzalez* (1976) 57 Cal.App.3d 736, 743-744.) But the court's express findings negated the elements necessary to support these claims and showed the deeds were not the result of a mistake.

*Findings on Misappropriation of Funds*

Christie contends the trial court should have made the finding that 1) Paulette Kimball falsely accused Christie of misappropriating funds, and 2) this "lie" motivated Schwarz to sign the deeds. But the court rejected the claim that Paulette lied when it found the Kimballs "believed [Christie] had misappropriated [Schwarz's] money." Christie notes the court also found the Kimballs "learned eventually that the money had been moved to another bank." She claims the court should have found the Kimballs made a baseless

10.

claim against her. The Kimballs disagree and claim Christie "misappropriated" funds because: 1) Christie closed the account and "moved the funds to . . . unknown places"; and 2) Christie presented no proof to trace "the status of the funds" from "October 30, 2007, when she closed the account to July 10, 2008, when she opened the new Trust accounts."

But additional findings on the misappropriation issue are not required because the trial court made sufficient findings that the actions of Schwarz, Lint and the Kimballs were reasonable. It said, "[T]he belief of the [Kimballs] that the money had been misappropriated was not unreasonable," because Christie removed the money without Schwarz's consent and knowledge and refused "to disclose the location of those funds." The Fremont bank special power of attorney required Christie to disclose account transactions to Schwarz. (*Leader v. Cords* (2010) 182 Cal.App.4th 1588, 1595 [duty to keep beneficiary informed].) Moreover, Christie's authority under that power of attorney terminated upon "[r]evocation by the grantor." The trial court found that "[e]vidence was presented that the power of attorney under which [Christie] acted had in fact been revoked prior to the time the money was moved."

We have reviewed Christie's remaining contentions and we conclude she has not shown error.

The judgment is affirmed. Costs on appeal are awarded in favor of respondents.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

11.

Rebecca S. Riley, Judge

Superior Court County of Ventura

_____


Danita Christie, in pro. per., for Plaintiff and Appellant.


Jones & Lester LLP, Mark A. Lester, Greg May for Defendants and Respondents.