Filed 5/21/15  Assadourian v. Smith CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JACK ASSADOURIAN, | B254865 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC058157) |
| v. | |
| TERRY LEE SMITH, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory Wilson Alarcon, Judge.  Affirmed.

Law Offices of Maro Burunsuzyan, Maro Burunsuzyan and David L. Scott for Plaintiff and Appellant.

Law Offices of Gregory J. Lucett, Lowell Houghton; Pollak, Vida & Fisher, Michael M. Pollak and Hamed Amiri Ghaemmaghami for Defendant and Respondent

_____.

Plaintiff Jack Assadourian appeals from a judgment in his action for personal injury against Terri Lee Shier (sued as Terri Lee Smith) (Smith). Plaintiff was injured in an automobile accident when defendant Smith's car collided with plaintiff's car. The jury found for plaintiff, but only awarded a total of $18,600 in damages out of the total of more than $3 million that plaintiff sought for general and special damages.

On appeal, plaintiff contends defendant's counsel engaged in misconduct by referring to facts not in evidence in counsel's closing argument, and that the jury improperly awarded a quotient verdict. On this record, we find that no prejudicial misconduct occurred because counsel's argument was a reasonable inference from the facts, and plaintiff cannot establish that the jury failed to deliberate on damages after the jury agreed to calculate a quotient of their individual opinions on the amount of plaintiff's damages. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

*1. Trial and Verdict*[1]

Plaintiff, who was 54 at the time of trial, lives in Glendale with his wife. Plaintiff is a restaurateur who owns and manages a café in North Hollywood that presents comedy acts. Plaintiff's work at the café required 10 to 12 hour days.

On April 20, 2010, at 10:30 a.m., plaintiff was driving west on Broadway in Glendale when defendant Smith's car turned in front of plaintiff and collided with plaintiff's vehicle. Plaintiff's car, a Mercedes E500, sustained heavy frame damage and was not drivable. After the accident, plaintiff was assisted out of the car and an ambulance arrived. Plaintiff declined any medical help because he believed that if he went home and lay down, he would be fine.

That evening, plaintiff was in pain and took some Advil. He had sharp pains in his lower back, left arm, and legs. The next day, he went to see a doctor, who recommended physical therapy. Plaintiff had not suffered from low back pain until the

---

[1] Plaintiff has designated only portions of the reporter's transcript for inclusion in the record on appeal.

accident, although he experienced some stiffness. Plaintiff thereafter attended physical therapy for four or five months. In July 2010, he had an MRI, and in September 2010, he was discharged from his doctor's care. In October 2012, he had two more MRI's. One for his lumbar spine and on for his leg. In November 2012, plaintiff's doctor recommended epidural injections for plaintiff's lower back pain. Plaintiff had three injections, but relief was only temporary. At the time of trial in October 2013, plaintiff was scheduled for back surgery.

Plaintiff's wife Tere Assadourian has assumed most of plaintiff's responsibilities at work. Plaintiff is unable to walk very much and cannot be on his feet for a long time. One morning (she does not recall the date), she went to brush her teeth and saw plaintiff sitting on the floor of the shower. Plaintiff now uses a bench when he showers. Plaintiff has trouble sleeping at night, and cannot sit in the car for long periods of time.

Plaintiff sought $45,089 for medical expenses, $143,000 to $153,000 for plaintiff's proposed back surgery, $300,000 in pain and suffering damages, and between $750,000 and $3 million for lost future income due to his injuries.

The jury returned a verdict for plaintiff, finding that defendant was negligent. The jury awarded $10,000 for total past economic damages, nothing for future economic losses, and $8,600 for pain and suffering.

2.      *Plaintiff's Motion for a New Trial*

Plaintiff moved for a new trial, contending defendant's counsel made an argument to the jury based on facts not in evidence, namely, that plaintiff fell in the shower. Further, plaintiff argued the jury failed to deliberate on the issue of damages and reached an unlawful quotient verdict. Defendant argued that no prejudice resulted from counsel's alleged misstated fact because her comments constituted a reasonable inference drawn from plaintiff's testimony, and the verdict was not an impermissible quotient verdict because there was no evidence the jury did not deliberate over the amount awarded after deciding upon it.

3

The court denied the motion, finding that counsel's argument that plaintiff may have fallen in the shower was a reasonable inference from the facts and did not constitute misconduct. Further, the court rejected any claim of improper jury deliberations because it was based on incompetent evidence—the declaration of an alternate juror who was not present throughout the deliberations.

## DISCUSSION

### I. Standard of Review

Code of Civil Procedure section 657, subdivision (1), provides a new trial may be granted for an "[i]rregularity in the proceedings of the court, jury or adverse party . . . by which either party was prevented from having a fair trial." A trial judge "is accorded a wide discretion in ruling on a motion for new trial and . . . the exercise of this discretion is given great deference on appeal. [Citations.] However, we are also mindful of the rule that on an appeal from the judgment it is our duty to review all rulings and proceedings involving the merits or affecting the judgment as substantially affecting the rights of a party (see Code Civ. Proc., § 906), including an order denying a new trial. In our review of such order *denying* a new trial, as distinguished from an order *granting* a new trial, we must fulfill our obligation of reviewing the entire record, including the evidence, so as to make an independent determination as to whether the error was prejudicial. [Citations.]" (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871–872.) Appellate courts are required to review the entire record, including the evidence, and independently determine whether prejudice resulted from the misconduct. Prejudice exists if it is reasonably probable that the jury would have arrived at a verdict more favorable to the moving party in the absence of the irregularity or error. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 802.)

### II. Plaintiff Cannot Demonstrate Prejudicial Misconduct in Argument to Jury On a Partial Transcript of the Proceedings

Plaintiff argues that defendant's counsel committed misconduct when counsel argued that plaintiff had actually fallen in the shower and that such fall was the cause of

4

plaintiff's need for additional treatment after concluding a round of therapy in 2010. Defendant argues the statements were permissible inferences drawn from the evidence, and in any event, plaintiff makes his argument on a partial transcript, precluding this court's review of the record and hence any finding of prejudice.

### A. Factual Background

At trial, plaintiff's wife testified on direct examination as follows:

"Q: Mrs. Assadourian, I want to now ask you to direct your focus and attention to changes in life-style that you have observed with respect to Mr. Assadourian. Specifically to one morning when you went in to brush your teeth. Is there something you saw that was different while he was in the shower?

"A: Yes. I know he was in a lot of pain. But I never realized how much was the pain until I saw so many different things that happen. That particular day I went to brush my teeth, and then I went quickly to the restroom, when very sadly I saw him sitting down on the floor of the shower.

"Q: Is that something you had ever seen before?

"A: No, not at all.

"Q: Okay. And what did you do when you saw that?

"A: At that time my mother had—

"Q: Take your time.

"A: I'm sorry. My mother had a bench that she uses to go to the restroom. So I pick up the bench, and I went to give it to him to sit down and shower, and it's very sad because he's such a strong man. He was a very strong man. And seeing your husband being that weak, it was very painful for me.

"Q: Mrs. Assadourian, has that bench been pretty much left in the shower for him to use when he showers? A: Yes."

On cross-examination, she testified that she believed it was "last year [2012]," but that she did not "remember dates."

5

During closing argument, defense counsel argued that plaintiff's wife had testified that plaintiff "fell on the floor in late 2012, which is kind of interesting. . . ." Further, counsel stated, "He fell in the shower. He got a torn meniscus and fell and had to sit on a stool, and after that is when he got an epidural." Plaintiff's counsel objected, but the trial court overruled the objections. Defense counsel continued in closing argument to stress this point, arguing:

"And nothing much else happened after that until he fell in the shower late in 2012 and hurt his knee. You heard there is an injection done on the knee. If you knew he had that misfortune of doing that, you know that's a nasty situation, and that certainly falling, twisting, hurting your knee like that, falling in the shower, yeah, you can hurt yourself. You can hurt your knee. You can hurt your back." Further, "Nothing serious happened until that day in the fall of 2012 when he fell in the shower. After that is when he got an epidural."

Plaintiff's counsel argued in rebuttal that: "He fell in the bathroom. I think I paid particular attention to the evidence. I think I took good notes. And I know you took copious notes. There was no falling in the bathroom. Where that came from I don't know. It can only be argued to claim that the severity of the protrusion of the disc was because of falling. Come on. [¶] Mrs. Assadourian testified that one day she walked into the bathroom to brush her teeth and saw Mr. Assadourian taking a shower on the floor. She said, 'I didn't know until that day how bad his low back was. When I saw him on the floor taking a shower.' He was provided a bench, and he's been using that."

### B. Discussion

Misconduct of counsel is an irregularity in the proceedings and a ground for new trial. Misconduct may take various forms, including improper argument to the jury. (*City of Los Angeles v. Decker*, *supra*, 18 Cal.3d at p. 870.) Counsel is given wide latitude in closing argument to discuss the case, state their view on what the evidence shows, and what conclusions the jury may draw from the evidence. (*Cassim*, *supra*, 34 Cal.4th at pp. 795–796.) Here, the claimed misconduct was nothing more than

6

permissible inferences that could be drawn from the evidence, namely, that plaintiff fell in the shower, and that is where his wife found him when she came in to brush her teeth. Further, the inference is proper that from that fall, plaintiff exacerbated his back condition, or injured his knee. We observe that apparently, there was medical evidence introduced at trial that supported these inferences. The first MRI, taken on July 20, 2010, showed what defendant described as a minor injury. The second MRI, taken on October 9, 2012, evidenced new trauma according to defendant. As set forth above, plaintiff's wife testified that she found her husband on the floor of the shower in late 2012, although she was not certain of the date, thus supporting an inference that something other than the car accident may have caused or exacerbated plaintiff's injuries.

Further, even if counsel's argument constituted misconduct, we are required to review the entire record, including the evidence, so as to make an independent determination as to whether the misconduct was prejudicial so as to warrant a new trial. (*City of Los Angeles v. Decker*, *supra*, 18 Cal.3d at p. 872.) However, plaintiff designated only a partial transcript on appeal. Consequently, in view of the abbreviated record proffered by plaintiff, it is impossible for this court to determine whether it is reasonably probable the jury would have arrived at a different verdict in the absence of any such misconduct. We cannot presume that any misconduct, if it occurred, was prejudicial.

## III.    Quotient Verdict

Plaintiff argues that the jury reached an unlawful quotient verdict on damages because they agreed in advance to add up their individual damage awards and divide the result. Defendant argues that plaintiff's evidence is incomplete and although the jury improperly created a quotient of damages, they may have properly deliberated over that amount and thus there was no juror misconduct.

### A.    *Factual Background*

Plaintiff relied on the declaration of Gregory E. Winfield, an alternate juror. Winfield stated that at the outset of deliberations, one juror, Salesh Karen, stated that he

had already decided that plaintiff's damages were worth $15,000 and he would not change his mind. After the special verdict form was given to the jurors, "the jurors decided the liability question and went straight to calculating the past medical costs. At no time did the jurors deliberate discuss any of the evidence regarding the actual injuries or emotional damages suffered by the plaintiff in this case. [¶] . . . There were no deliberations about the case, and the jury instructions were never even referred to at any time during the deliberations."

Winfield stated that "the jurors were adding the past medical bills, juror number 13, Julia Garcia Gonzalez, said in a very loud and intimidating voice that Mr. Assadourian's low back injuries were from falling in his shower two years after the accident and as such, defendant should not pay for any care after the first $10,000.00 in care in the first year. As a juror I heard all of the evidence during trial. There was no evidence at trial that Mr. Assadourian had ever fallen in the shower[, there was] only evidence that Mr. Assadourian's back pain was so severe that his wife had seen him showering while he was sitting on the shower floor. As an alternate in the deliberation room I was prohibited from speaking, and I therefore said nothing. [¶] . . . She never said or even implied that he had fallen in the shower, and there was no evidence that he had ever fallen in the shower. [¶] . . . [¶] After the lunch break each of the jurors either said or wrote down the amount of damages they wanted to award. There were no deliberations or comments about any of the numbers given by any of the jurors. These numbers were then being added to a total amount that would be divided by 12 to arrive at a verdict on damages. Prior to deliberations I heard the Judge specifically instruct the jury that the jury was *not* to take a damage amount from each juror and make the average their verdict. Despite the Judge's instruction, this jury did exactly what the Judge told the jury they must not do. At that point, I was becoming so angry at the jury's refusal to deliberate the evidence or follow the instructions of law given by the Judge that I could no longer remain in the room. I knocked on the courtroom door and asked the clerk once she opened it if I could just wait outside and I was allowed to do so."

8

The jury here was instructed with CACI No. 5009, providing that "you must not base your decision on chance, such as a flip of a coin. If you decide to award damages, you may not agree in advance to simply add up the amounts each juror thinks is right and then . . . make the average your verdict."

### B.    Discussion

"A refusal to deliberate consists of a juror's unwillingness to engage in the deliberative process; that is, he or she will not participate in discussions with fellow jurors by listening to their views and by expressing his or her own views. Examples of refusal to deliberate include, but are not limited to, expressing a fixed conclusion at the beginning of deliberations and refusing to consider other points of view, refusing to speak to other jurors, and attempting to separate oneself physically from the remainder of the jury. The circumstance that a juror does not deliberate well or relies upon faulty logic or analysis does not constitute a refusal to deliberate and is not a ground for discharge. Similarly, the circumstance that a juror disagrees with the majority of the jury as to what the evidence shows, or how the law should be applied to the facts, or the manner in which deliberations should be conducted does not constitute a refusal to deliberate and is not a ground for discharge. A juror who has participated in deliberations for a reasonable period of time may not be discharged for refusing to deliberate, simply because the juror expresses the belief that further discussion will not alter his or her views." (*People v. Cleveland* (2001) 25 Cal.4th 466, 485.)

A "quotient verdict" is a form of chance verdict where the jurors agree in advance to be bound by the "average" (or other quotient) of their individual damage determinations (i.e., they agree to an uncertain and unknown sum). (*Chronakis v. Windsor* (1993) 14 Cal.App.4th 1058, 1064.) However, quotient verdicts are improper only when agreed to beforehand. No misconduct occurs when the jury uses an average sum or other quotient as the basis for further discussion and balloting on the damages amount, even if the quotient amount is subsequently adopted as the verdict. (*Fredrics v. Paige* (1994) 29 Cal.App.4th 1642, 1646 [jurors each wrote down on a piece of paper an

amount they thought would be a fair verdict, and after determining the average, they discussed it and voted a verdict in that amount; because there was no prior agreement to be bound thereby, this was not a quotient verdict].)

Juror misconduct may be proven with affidavits. Evidence Code section 1150, subdivision (a), provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." "This statute distinguishes 'between proof of overt acts, objectively ascertainable, and proof of the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved . . . ." (*People v. Steele* (2002) 27 Cal.4th 1230, 1261.) "'This limitation prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent. The only improper influences that may be proved under [Evidence Code] section 1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration.'" (*Ibid.*)

Here, we find no evidence of juror misconduct. Although juror Karan stated he had a set figure in mind ($15,000), the jury thereafter agreed to throw all of their damages numbers in a pot and derive the quotient. Up until this point, when Winfield left the jury room, such actions potentially constituted juror misconduct because the jury seemingly agreed ahead of time to derive a quotient verdict. However, Winfield left the jury room before the verdict was actually rendered, and we have no way of knowing whether the jury actually deliberated on its quotient verdict—deliberations that would have rendered the quotient an acceptable verdict. Thus, this gap in Winfield's knowledge is fatal to any claim of juror misconduct. As the trial court noted, there was no evidence that the jury failed to deliberate further on the propriety of any damage quotient it

10

determined.  As the burden is on plaintiff to demonstrate error, this showing is insufficient.  (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 641.)

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


BENDIX, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.